Catron, Judge.
That an attorney may be stricken from the roll for good cause, none can doubt. 1 Mart, and Yerger’s Rep. 70, 71; Stat. 4 H. 4, C. 18; St. Westminster 1, C. 39; 2 Inst. 213, 14, 15.
Much inquiry has been made into the powers of the courts to remove attorneys; if the old statute of H. 4, had been examined, that which has been searched for, and found obscurely hinted at in so many authors, could have been found in a short paragraph; the statute first provides that all who are of good fame shall be put upon the roll, after examination of the Justices, at their discretion, and after being sworn well and truly to serve in their offices: “And if any such attorney be hereafter notoriously found in any default, of record, or otherwise, he shall forswear the court, and never after be received to make any suit, in any court of the King. They that be good and virtuous, and of good fame, shall he received and sworn, at the discretion of the justices; and if they are notoriously in default, at discretion, may be removed upon evidence either of record, or not oí record.”
This statute has received the sanction of four centuries, *230 without alteration, and almost without addition; govern- . /» , , i / i mg a profession more numerous ana powerful (when applied to counsel also, as in most of the United States) than any known to the history of the world, without complaint of its provisions, or abuse of power on the part of the court, in its exercise, so far as the judicial history of England or America furnishes instances. ít is remarkable, that there is not a provision in any act of assembly of Tennessee upon the subject, but what is in strict affirmance of it; nor does a single provision go beyond it: our statutes require that the attorney shall be of good moral character, learned, and of capable mind. A loss of either of these, is good ground for withdrawing the privilege conferred by the license.
Suppose ah attorney were to become insane, by the hand of providence, or by intemperance,he would be disqualified, and the license should be withdrawn; were he to become besotted and notoriously profligate, he would be neither virtuous nor of good fame, and should be stricken . from the roll. An hundred instances might be cited, where attorneys, once qualified, might become disqualified, when the privilege should be taken from them. Who must perform this duty? The power which has conferred the appointment; that is, every court where the attorney is permitted to practise, for they equally extend the privilege. The principle is almost universal in all governments, that the power which confers an office, has also the right to remove the officer, for good cause — the county court; constables <&c.; the senate; officers elected by the legislature and people: in all these cases the tribunal re-movingisof necessity the judge of the law and fact; to ascertain which, every species of evidence can be heard, legal in its character, according to common law rules, and consistent with our constitution and laws. This court, the circuit court, or the county court, on a motion to strike an attorney from the rolls, has the same right (growing out of a similar necessity) to examine evidence of the facts, that the senate of the state has, when trying an impeachment. The authorities to sustain these positions are all *231 cited in the cause of the State against Fields, (1 Mar. and Yerg. Rep.) and will not here again be referred to.
We will now examine the practice pursued upon these principles in England. There grounds are laid for a rule upon the attorney to shew cause why he shall not be stricken from the roll; if sufficient, the ruléis entered, the attorney notified to appear and answer, as in case of a contempt; if he sees proper to answer, it is received, evidence is examined to support the motion, and to resist it, upon which the court decides.
The practice under the act of 1815, ch. 97, must he the same, with this difference; that a charge may he exhibited to a judge in or out of court, alleging the default or misdemeanor complained of; if the judge deems the charge sufficient to warrant the removal, he shall cause the attorney to be furnished with a copy, and cite him to appear in open court, when the proceedings are conducted in all respects as under the British siatute. The attorney may answer the charges in writing if he chooses, when evidence will be heard to support or to resist them; or if he does not answer, still the charges must be proved, or confessed by the defendant, before he can be stricken out of the roll. Suppose the charges insufficient, he may move to quash them; there the matter will end. Pleas and demurrers never entered the mind of the legislature, when prescribing the mode of proceeding by the act of 1815; they only meant that the plain man, ignorant of law, should have a plain remedy against a member of a profession possessing many advantages m skill over him — that his statement should be taken as, prima facie, true, the same as the affidavits upon which the rule was grounded by the previous practice, requiring legal skill, ' not always and in all situations to be so easily obtained against another lawyer. The practice is a correct one, from which innocence has nothing to fear. The circuit judge was., therefore, mistaken in supposing the demurrer could be filed, or that it operated any thing; he should have stricken it out, and heard the proof. The defendant had clearly the right to quash the charges if they *232 are insufficient to warrant his removal. Having made this motion, which was refused by the court below, we must give the judgment that court should have given, upon the validity of the charges.
The first charge is, that the defendant accepted a challenge to fight a duel, from one Robert M. Brank, in the county of Maury, Tennessee.
2d. That he did fight the duel with said Brank, in the Commonwealth of Kentucky, where he did kill and murder said Brank, and that he stands indicted for said murder, in the county of Simpson, and Commonwealth of Kentucky.
The act of 1809, ch. 5, sec. 1, provides, “that any person or persons, citizens of this State, who shall be guilty of giving or receiving a challenge for the purpose of fighting a duel, within or without this State, or shall be the friend of either party, in bearing a challenge for that purpose, every such person or persons, shall forever after be incapable of holding any office, or appointment, whether of honor or profit, and shall, moreover, be incapable of giving testimony in any court of record, or serving as a juror.”
The act of 1801, ch. 32, sec. 3, declares the Rilling in a duel, murder, and that the survivor shall suffer death» This provision was wholly unnecessary, as it always has been murder, punishable with death, without the benefit of clergy, to kill in a duel; 1 Hawk. Plea. ch. 1, sec. 21, page 122. The second of the slayer being an accessary before the fact, and a principal present when the murder was committed, aiding and abetting, is equally guilty of murder, arid subject to suffer death; 1 Hawk. ch. 1, sec. 31, page 124. It is the law of every Christian country in the known world. Notwithstanding the laws, sanctioned by the concurring opinion of mankind for centuries, it is gravely insisted, (accompanied by predictions of terrible consequences,) that it is not our duty to have them executed, because it is said good character is not forfeited in this instance, and therefore disqualification should not follow'; to prove M’hirb. the acts of many English names in *233 the last and present centuries are referred to, as also many in the United States, who have sanctioned the practice by being parties to duels, and who continued thereafter equally distinguished members of society* Let us examine the matter.
If is true, as a part of the history of our species, that many men of strong minds, have equally strong passions, which are ill controlled, and subject such men to grosser errors than others with fewer mental advantages; these are the men of worth that fight duds, having no guide but blind and reckless passion when aroused, regardless of their own lives or those of others; hence their conduct furnishes the worst possible evidence upon which to ground a rule for the government of society. This class of duellists are not less wicked than others we will name, but their standing renders it more difficult to punish them.
Another set of men fight duels, (or more generally make a show towards it,) to gratify their vanity, by drawing upon themselves a little temporary notice, which their personal worth or good conduct cannot procure. These are always worthless coxcombs, equally destitute of brayery, virtue, or sense, whose feeble nerves would be shattered and prostrated at the sight of an enemy in the field of battle, who are ridiculous in every situation where courage or conduct is required. This class of duellists do little harm other than to disturb the community; they quarrel to make peace; or if officious intermeddlers force them into a fight, are too much alarmed to hit, or perhaps see their antagonist. The affair is laughed at as a farce, and the parties turned over to the constable.
Many of this description challenge, because they know the party challenged will not fight; having a due regard for religion, the laws of his country, and his family. The infamy or worthlessness oí the challenger generally is such as to disgrace any decent man to notice him. These pretenders to bravery and gentlemanship, are always absolute cowards; for no man will challenge another, knowing he either will not, or dare not fight, unless he be cowardly. The officers of our army at present dare not *234 fight; therefore it is a disgrace for one officer to challenge another. The most distinguished man in the service lately refused to accept or reply to a challenge, from an officer of equal rank, because he feared his God, and the laws of his country; he has met his due reward, by having accorded to him the unlimited approbation of his countrymen.
Let it be once understood that the Bar of Tennessee dare not fight, and it will be deemed cowardly to challenge a member of it; and this court solemnly warns every lawyer, that if he violates the laws made to suppress duelling, we will strike him from the rolls of the court, upon the fact being made known to us. The truth is, such men are too often insolent and impudent bullies, who tyrannise over, and impose upon all orderly men about them;- who literally dragoon society, by fear of personal violence, into silence and seeming acquiescence, with respect to their conduct. That such a counsellor is a disgrace, and serious incumbrance to any court where he is permitted to practise, all will admit; those who engage in duels, the statutes deem, and we will treat, as of this description.
Another class accept challenges, and even challenge and fight, for the very reason that they want true courage; they have not moral and independent firmness enough to disregard the giddy assertions of that idle part of the community, who say a man is a coward, because he refuses to fight; not that such people have either belief or disbelief of what they say; they are too light minded to form any settled conclusion, and repeat idly as the parrot, what some revengeful neighbor has before said, who gratifies his malice by mixing gall in the cup of another. The pride, weak nerves, and morbid sensibility of such a man, forces him to the pistol’s mouth of a ruthless and unprincipled antagonist, as feeble, trembling and unresisting as the lamb to the shambles, and with almost an equal certainty of destruction, because he still more fears the detraction of the malicious and the gossip of the giddy. The same principle of human action often induces the *235 delicate and sensitive female, with fear and trembling, to assent to see herself made a widow, and her helpless infants orphans, by the butchery of her husband in a duel. Any man who takes the life of another, under such circumstances, (forced upon him by wicked design,) can be truly said to “have a heart regardless of all social order, and fatally bent upon mischief;” and he should suffer death for the crime, because he has bullied his antagonist into resistance, and then murdered him.
Nervous and timid men of the foregoing description, if they come off unslain, fail to obtain their objects; society will,not believe them brave. There is an instinct in our nature that mocks every art upon this subject; it tells us whether a man is, or is not, fearless: upon all, from the tottering infant to the savage bully, the same impression forces itself. The fearless man walks through life without assault, and without reproach on his bravery, from those worthy his notice, although he may continually have refused to fight duels. No man ever persuaded the world he was fearless, unless the fact was so. Should it be a reproach, that a weak and nervous man has not the courage of a lion? It is a reflection upon God and nature to require it.
It is said single combat is often the only redress that can be had for a personal injury; we apprehend those who hazard the assertion not very deeply road in the moral code, and much better acquainted with their own passions than the human heart; they tell us wicked vengeance and murderous crime, is redress? This is not the precept our Saviour taught, our religion inculcates, and our laws enjoin; malice, vengeance, and crime, have no place but in the catalogue of iniquity. If one respectable man says a harsh and injurious thing of another, it is almost uniformly in some moment of high excitement, in the bar or elsewhere; — the result of instant and angry passion, of which the offending party in a few hours, when he becomes cool, is heartily ashamed; most willingly would he make reparation had he an opportunity; but he cannot nor will not be bullied into it, by threats of pun *236 ishment. Let the offended party wait until the excitement has passed off, and he will generally find half the sin resting upon himself: were the writer to judge from his own experience, this would be a small allowance. He should then go to the offender, in a firm, serious, and just temper, and inquire of him the reason for the injury; he will then hear his own fault for half the excuse, the angry and excited passions of his neighbor for the other half; here the matter will end, almost as assuredly as that God is just. I ask every grey-headed man in American society, did this course ever fail you, with a man worthy of your notice?
But this requires more moral courage, and fearless firmness, than most men are masters of; they prop their doubtful courage and trembling nerves, by applying to some supposed friend, who often turns out to be one of those malicious whisperers, and agitators of duels, whose revengeful heart glories in seeing his species murder each other in cold blood; generally in addition having some secret revenge to gratify against the offender, for which reason he is but too often applied to. Here the cunning machinations of malice have fair room for action; a duel is of course advised as the only redress honor can allow of; every means is used to bring it on; every sinister trick and argument is employed to keep the principal firm fo the desperate purpose, who surrenders his judgment and his life into the hands of wickedness to be destroyed. Such agitators have cold and cruel hearts, dead to every moral sense or feeling of humanity; generally afraid to encounter danger themselves in the field of battle, or even ina ridiculous duel, wherein certainly ten cowards engage to one brave man. Who ever heard of a ^>rave and fearless man exciting and urging on another to a duel, to the destruction of himself, his poor unoffending wife, and helpless infants, without using all means possible to adjust it? No one. It is the working of cruelty, insidious cunning, and malice, under the seemly garb of friendship, that does this. Not such as these, but men of great moral worth, fearlessness and independence, should *237 be applied to for advice and aid, who will generally settle the matter with a few words of advice to the parties— perhaps laugh at the trifle that set the passions in commotion; have some silly mistake explained, and end the matter. The brave man is always generous, feeling and just, and others submit to his judgment with pleasure.
Such are duelling and its consequences; and such generally, the characters of the men who engage in the practice; which, if it does not involve wickedness and criminality, crime deserves no name, and morality no place in the human heart — they do not exist, if this be not a crime.
To restrain the blind and criminal passions that drive to ruin the fearless and valuable man; to restrain the wicked vanity of the noisy coxcomb; and to protect from his miguided fears of giddy and idle ridicule, the physically weak and nervous man, have mankind generally, and Tennessee in particular, legislated to punish duelling.
Taking the petition for true, and how does the case of the defendant stand? By the laws of God, the laws of England from the days of the Edwards; by the laws of Kentucky and Tennessee, and every civilized land, he is declared to have been guilty of wicked and malicious murder, and a felon fled from justice. Is it possible that any well balanced mind can, for a moment, believe that a man whom the law thus condemns, is a fit person to be an aider and adviser in the sanctuaries of justice!
We are told this is only a kind of honorable homicide! The law knows it as a wicked and wilful murder, and it is our duty to treat it as such — we are placed here firmly and fearlessly to execute the laws of the land — not visionary codes of honor, framed to subserve the purposes of destruction.
The cause will be remanded to the Maury circuit court, for the proofs to be heard by that court; what they will be we know not, having only examined the motion to quash: the competency of the proofs we give no opinion upon, nor their effect, further than the petition sets them forth; to wit, a true bill for murder, found in Simpson county, Kentucky; which, if proved by the record to be *238 the fact, we think amply sufficient to authorize the circuit court to strike the defendant from the roll of attorneys, had no statute to suppress duelling ever passed in Tennessee, because the defendant stands charged with capital felony, and has prima facie forfeited his life. Were we to permit him to practise law, Tennessee would be offered as a sanctuary to all flying from justice elsewhere; those guilty of the highest crimes, would be our advisers and aiders to execute those laws, against which they had so grossly offended in a sister state: this would be a disgrace to justice, and cannot be permitted.
Peck, Judge.
The defendant’s counsel object that the circuit court erred, 1st. in not permitting the defendant to withdraw his demurrer, and enter his motion to quash.
2d. That he should not have been deprived of his privileges in this summary way; and
3d. That the charge, if true, does not relate to any act done in the course of his professional duty, and consequently, is not subject to the censure of the court.
4th. That being indictable under the act of assembly, the party was answerable by presentment or indictment at the prosecution of the State, and not otherwise.
That a court has had and exercised a summary jurisdiction over attornies admitted to its bar, cases, from the earliest period up to the present time, fully establish. In matters touching their duty, they may by the court be fined— subjected to the payment of costs of parties litigant— made to deliver up papers confided to them — committed, suspended, or stricken from the roll of attornies. Tidd’s Practice, 81; 4 Moore, 171; 7 Moore, 376; 2 Burrow, 654; 4 T. R. Mod. cases, 187; Hawkins PI. Crown, 369. This power, inherent in the courts, must be conceded to them, and the exercise of it must be summary.
It is said, and with truth, that often the dignity, the purity, and even the existence of the court, to any useful purpose, depend upon the right to exercise this power. The court, ex debita justitia, will notice the acts of her officers, and will approve or condemn as merit or demerit, on examination, may justify.
*239 In cases unconnected with his duty as an attorney, after conviction for an offence clergiable, he may receive his clergy and then be stricken from the roll of attornies— although clergy may, as to other privileges, operate as a statute pardon; and should an attorney so disgraced presume to appear and practise afterwards, he may, for such his contempt to the order of the court, on summary motion, he transported, without the intervention of a jury. This last is in virtue of a recent statute; 12 Geo. 1, ch. 29, sec. 4; 1 Chitty C. L. 811.
Such in England has been, and still is, the power of courts over this class of the community; and such being a summary of British law-founded partly on acts of parliament, and partly based upon the principles of common law — it is nest to inquire whether an attorney in this State stands upon higher grounds than attornies in England occupy. The first act which it is important to notice, is that of 1S09, ch. 6, for the admission of students — • next the act of 1815, ch. 97, for the admission of those from other States. Each must produce record evidence of full age and good moral character. On that is based the right to admission as an attorney. It would require no argument to shew that if good moral character when admitted is necessary, the reason is just as strong for his retaining that good moral character after admission — good moral character being apre-requisite and quality in the attorney. It is the bounden duty of courts, when their attention is directed to it, to see that such good moral character shall be constantly preserved. The property, characters, and to some extent even the lives of individuals are committed to the care of the profession. It is not only a high and honorable calling, to winch the community naturally look up, but connected with it is a trust: of the profession is expected probity, integrity and example — next to a judge he should be the guardian of the constitution and of the law — because he is presumed to know what it is, and because his oath has bound him honestly and faithfully to walk within the pale of her precepts.
It was aberrations from this walk that must have pro *240 duced the statute of 4 Henry 4tb, ch. 18, more than four centuries ago; and like aberrations, in modern times, produced the act passed by our legislature in 1815, cli. 97. This act is broad in its terms — the design of the legislature, so far from abridging the powers of the courts in the control of the profession, evidently intended an enlargement — “and if upon investigation it shall appear to the satisfaction of the judge that such attorney has been guilty of any misdemeanor which ought to disqualify him from practising as an attorney, it shall be the duty of the judge before whom, &c. to stiike his name from the rolls; and it shall not be lawful for such attorney so disgraced to practice as such in any court of record in this State.”
This act gives a very unlimited discretion to the judge; and the makers of this law well knew the characters of some' of those the court might have to deal with — for while, to the honor of the profession be it spoken, a large majority, by an adherence to duty, did honor to their privileges — there were found amongst them, now and then, such as require the strong arm of the law to restrain from those acts of impropriety and violence, which pointed them, out as unworthy of stations, which brought them into so near a relation with the administration of justice.
The legislature knew, that law administered in the usual form, was tardy; and that any course short of a speedy ministration would lose much of its beneficial effect. The mazy round of special forms of pleading, miscarriages before juries, and the delay incident, would afford a labyrinth, in the folds and windings of which, the wily could, at least for a time, take shelter, if not finally escape. Therefore it was not deemed prudent to allow one so charged the right to demand forms of trial calculated to defeat the very purposes of the act, namely, a speedy riddance of an obnosions member of the bar.
Is the charge such then as ought to deprive the plain-tiffin error of his privileges? The sum of the charge is, that he has received a challenge — has fought a duel— and has killed his antagonist — (the act of killing, it seems tobe admitted, was in another State.) This, it is said, *241 being; an act aside from his professional duty, works no c ... , , ,i r . ,. forfeiture — that so long as the profession receive him as an honorable man, so called, or so long as public opinion does not discountenance him, the court will not notice it as a ground of removal.
, Let it be answered, once for all, that public opinion may be one thing, and law another. The law of the land is uniform, and operates upon all alike; and every honest man, feeling its influence, pays homage to it. Not so with that law which is based upon public opinion — it is changeable: who shall promulge it — and who shall collect the public opinion, to know if it be that acceptable thing talked about?. I say no man approves duelling, and public sentiment is with me on the subject. When I hear one admit that duelling is the law of society, and that a chivalrous spirit will foster it, I view him as servilely submitting to be chained to the wheel of the successful gladiator, conquering desperado, and defier of all law human and divine — he who yields him the palm, drops his moral courage, and seeks for safety beneath the brandished sword of one to whom he will do fealty so long as the chivalrous name affords protection; while the man of moral courage will prove himself no coward by admiring and submitting to the laws of his country, before this dishonorable resort to savage custom. I am drawn into this digression, as well by the zeal with which the doctrine is urged for the plaintiff, as by an admission in argument which was not expected by the court, and if I wanted any thing further to support me, it would be, found amongst enlightened patriots — true chevaliers — the guardians of American freedom — American soldiers. The rules and articles of wrar expressly forbid it: and he who is guilty of duelling, is by those articles stricken from the rolls of the army as unfit to defend the rights of the States. This is enough, and is going to the fountainhead.
The charge laid, is the crime of murder; and is if the less a crime because committed in another State? Not in the least: no matter if the motive for fighting in Kentucky was to evade the laws of this (State. The plea of *242 place, while it proves the imbecility of offended law in reaching and punishing a criminal act, proves likewise that he is a fugitive from justice — one who may he pro-clamated, and whom the executive, under his oath of office, and the influence of that comity which must exist between sister governments, will surrender up to that country whose laws have been so violated.
I come lastly to consider, whether the court erred in giving the judgment which has been rendered, on Ihe demurrer; and I am free to own, that if I could see any advantage that the defendant in the court below could have derived by a motion to quash, which could not as well be attained by the demurrer, I would b.e inclined against it; but Smith, in moving to withdraw the demurrer, did not pretend that he could place himself in any better attitude. Did he want to let in evidence? Did he want to answer over? We are not .informed by the record that he did: why then urge that the court erred ? The demurrer questioned the law of the case — all charges well laid were admitted. The defendant was in a delicate situation— facts disclosed might have made it necessary in the judge to bind over the defendant, while he had a right to make the best of his case, in choosing amongst evils, perhaps seized the least when he chose silently to admit facts and rest in law. Unless Smith had laid his grounds for the admission of testimony by an affidavit, making it at least probable that he could derive advantage thereby, Í should, like the circuit judge, have been against letting the party off from the admission made by his demurrer.
But about the form of reaching the merits of the charge, J am not tenacious. In sending back the cause, the suspension will not be removed. The circuit court will hear the testimony, and if from the whole case he shall still be of opinion that the acts done by Smith are of such a character that it ought to disqualify him from the privilege of appearing as an attorney in any of the courts of the State, he will make rules upon Mr. Smith accordingly.
For myself, 1 take no pleasure in speaking in terms of severity against some of those vices- which the false no- *243 lions of honor have roused and put in action — on the contrary, I deeply regret the necessity of it.
This cause, while brought under my consideration, has been found mingled with those, developing crimes of the blackest die. While others have answered to charges touching life, a man, who but the other day boasted himself the equal of those offering before us a manly plea for suffering humanity, must feel sensibly the force of that degradation into which his misdemeanor, to call it by no worse name, has plunged him. It is humbling to reflect, that when he should have preserved and improved his strength for the defence of the helpless, the widow and orphan, he is rejected for the crime of having made them such.
Whyte, Judge, concurred.