## BURNS v. STATE.

No. 12992.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 14, 1934.

Rehearing Denied Nov. 2, 1934.

A. B. Curtis and A. W. Christian, both of Fort Worth, for appellant.

Baylor Agerton and Jesse E. Martin, both of Fort Worth, for the State.

LATTIMORE, Justice.

By judgment of the Seventeenth district court of Tarrant county in 1929 the license of appellant to practice law in the state of Texas was revoked for fraudulent and dishonest conduct as an attorney. In 1933 he filed in that court his petition in which he set up that he is of good moral character and leading a life of sobriety, economy, and good conduct, that he is deeply repentant of any wrongs he may have committed, and in short pleads facts which would undoubtedly appeal strongly to one having authority to grant his prayer that his license to practice law be restored to him.

The appellee, through her district attorney, pleaded to the jurisdiction of the court and was sustained. The application of appellant was dismissed.

■ A part of the obligation of an attorney at law is to serve as an officer of the courts. No one has an inherent right to be an officer of his government. Article 2, § 1, Texas Constitution. The state may therefore prescribe the qualifications for those of its officers who serve as such in practicing law in its courts. Ex parte Williams, 31 Tex. Cr. R. 262, 20 S. W. 580, 21 L. R. A. 783.

■ In view of the above, we naturally expect and do find it universally held that the disbarring of an attorney from the practice of law does close the door to his practice of law, but does not seal it. The prime object is to protect the people. Scott v. State, 86 Tex. 321, 24 S. W. 789, 790. It is a question of policy as to what will best aid in the administration of justice to the public. Almost all our common-law courts express the belief that the hope the disbarred attorney for restoration to the privileges of his profession, the realization that the government, which stripped his honors from him, desired him to shake off the shackles of his evil deeds, is consistent with and promotive of the best government by the people as well as consonant with human happiness. The quality of such mercy "blesseth him that gives and him that takes." Crawford v. Keegan, 125 Me. 521, 134 A. 564; Redmond's Case, 120 Miss. 536, 82 So. 513; In re Boone (C. C.) 90 F. 789, 793; In re Treadwell, 114 Cal. 24, 45 P. 993.

■ It is argued that the judgment of 1929 is res adjudicata of the relief prayed for. It is true that, as respects pleading and jurisdiction and supersedeas and in general such procedural matters, a disbarment suit is a civil suit. Scott v. State, supra; Houtchens v. Mercer, 119 Tex. 431, 29 S.W.(2d) 1031, 69 A. L. R. 1103. Its object is not punishment but rather to keep clean and efficient the machinery of government, machinery which, as far as differences of private citizens are concerned, is furnished by the government for the settlement of those differences. The interest of the government in such machinery is therefore different from the results of the operation thereof. So the reason for applying the rule of res adjudicata as the same exists in litigation of purely private rights not fraud, error, or mistake does not exist here. When the reason fails, the rule should fail. It is more analogous to those matters of public interest, such as welfare of children, insanity, etc., which the law allows to be relitigated as often as changed conditions make a different result probable.

Has he applied to the proper authority to grant him such privilege? We have found no authority in this state on this question. The expression is found in many cases that the court which disbars has the power to reinstate. Those cases in the main were applications to the Supreme Court of the state where the disbarment was also by that Supreme Court. In re Treadwell, 114 Cal. 24, 45 P. 993; In re Burris, 147 Cal. 370, 81 P. 1077; In re Hawkins, 4 Boyce (Del.) 200, 87 A. 243; In re Evans, 42 Utah, 282, 130 P. 217; In re Simpson, 11 N. D. 526, 93 N. W. 918; In re Salsbury, 217 Mich. 260, 186 N. W. 404; Essington's Case (People ex rel. v. Essington), 32 Colo. 168, 75 P. 394. However, in Redmond's Case, supra, the application to reinstate was made in the lower court. In King's Case, 54 Ohio St. 415, 43 N. E. 686, where disbarment was in common pleas, the applicant was thereafter admitted by the Supreme Court in ignorance of such disbarment and such license was by the opinion cited revoked by the Supreme Court. So also in Crawford v. Keegan, 125 Me. 521, 134 A. 564. In re Boone's Case, 90 F. 793, the Circuit Court which had stricken the attorney from the rolls readmitted him.

Nor has any distinction drawn of the modern statutory boards of legal examiners been recognized in at least the following cases: Redmond, supra, King, supra, and Crawford v. Keegan, supra. The existence of such board of legal examiners for those who have not been disbarred is recognized in those jurisdictions.

We have not examined the statutes in the states of the cases cited to ascertain the con-

tent of same, for the reason that the statutes of Texas provide: "No license to practice law * * * shall be issued by any court or authority, except by the Supreme Court, * * * under the provisions of this title." Article 306, Rev. Civ. Statutes 1925.

This statute was enacted in 1919 as a part of legislation which abolished the examiners under the Courts of Civil Appeals. Both the prior statute, article 312, R. S. (1911), and the present state that the Supreme Court shall by its own rules insure that the license to practice law be evidence of (inter alia) good character. Likewise, the statutes creating the board of legal examiners make it plain that such board is merely a fact-finding agency to report same to the Supreme Court with recommendations. It must have been the intention of the Legislature that no person should be given the right to practice law in Texas thereafter except he comply with the provisions of title 14 (1925). Thus articles 307 and 308 deal with those exempt from examination, and articles 311 and 312 et seq. with the loss of that right to practice law. The rule-making power thus expressly emphasized in the title is ample to fit such cases as this at bar. We do not attempt to say that he must go to the board of legal examiners. We are not called on to go further than to direct the appellant to apply to the Supreme Court.

Attention in appellant's brief is given to the rule that a statutory remedy is generally held not to exclude a common-law remedy when the statute does not affirmatively negative such remedy. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778. The doctrine, unius inclusio alterius exclusio, is also particularly applicable to construction of statutes which have for their protection the governmental weal such as we have shown these statutes to be, and we believe the latter doctrine should be applied here. In this connection, we note that in the Hawkins Case, supra, the court prescribed the rules for the applicant and declined to lay down any general rule, saying such cases would be dealt with as they arose. Many good reasons occur to us why the legislative rule as we interpret it should be the law. The uniformity resulting, the removal of the issue from local prejudices and political fields are apparent.

There only remains to be considered a question not presented by the appellant but argued by amicus curiæ. Is the statute, if held applicable here, unconstitutional as an infringement of the Legislature upon the ju-dicial department in violation of article 2, § 1, Texas Constitution? We think, in the absence of legislation, the power of the court to appoint its attorneys is inherent. Likewise, we have no doubt that legislation which would destroy the free and independent functioning of the judiciary would be a violation of such article. However, it is plain that such powers and summary jurisdiction may, within reasonable limits, be defined and the exercise of such functions of the courts be regulated by statute. "We have no serious doubt that the legislature was empowered to regulate the exercise of the jurisdiction of the district courts in this matter." Scott v. State, supra.

The judgment of the trial court is affirmed.

POWER, Justice (dissenting).

It is my view that the law applicable to this case is well stated in 6 Corpus Juris, p. 615, § 97, as follows: "An order or judgment of disbarment is not necessarily final, or conclusive for all time, but an attorney who has been disbarred may be reinstated, on motion or application, for reasons satisfactory to the court. Such restoration may be provisional where the attorney's conduct after his dismissal has not been wholly free from blame. The decisive question on such an application is whether the applicant is of good moral character in the sense in which that phrase is used when applied to attorneys at law and is a fit and proper person to be intrusted with the privileges of the office of an attorney. To establish this fact, on an application for reinstatement, the mere formal proof of good character required upon an original application is not enough; nor is a petition by attorneys and others, stating that in their opinion the applicant has been sufficiently punished. The proof must be sufficient to overcome the court's former adverse judgment of the applicant's character."

Further applicable to the case under consideration is the following from section 98, vol. 6, p. 614, Corpus Juris: "After an attorney has been disbarred, the judgment remaining unreversed, he cannot apply, as in the first instance, for admission, but must apply to the court in which he was disbarred to be reinstated. The general procedure provided by the code for a new trial or rehearing of causes does not apply; nor is the application otherwise to be restricted to a procedure in the nature of a bill of review, or governed by other equity or common-law rules."

This statement of the law is supported further by In re Kaufmann, 245 N. Y. 423, 157 N.

E. 730, 732; In re Boone (C. C.) 90 F. 793; In re Hobbs, 75 N. H. 285, 73 A. 303; In re Hawkins, 4 Boyce (Del.) 200, 87 A. 243; Crawford v. Keegan, 125 Me. 521, 137 A. 564; Ex parte Redmond, 120 Miss. 536, 82 So. 513; In re Simpson, 11 N. D. 526, 93 N. W. 918; In re Salsbury, 217 Mich. 260, 186 N. W. 404; People v. Essington, 32 Colo. 168, 75 P. 394; In re Treadwell, 114 Cal. 24, 45 P. 993; In re Burris, 147 Cal. 370, 81 P. 1077; In re Evans, 42 Utah, 282, 130 P. 217; In re Nisbit, 77 Cal. App. 260, 246 P. 120; In re King, 54 Ohio St. 415, 43 N. E. 686.

The statement of the common law pertaining to reinstatement of disbarred attorneys, as set out in the text quoted and supported by the authorities quoted, seems to evolve the rule that under the common law the trial court which disbarred appellant has the inherent continuing exclusive jurisdiction to reinstate him at any time upon motion or petition upon such grounds as may be satisfactory to it.

I cannot bring myself to believe that there is any abridgement of this common-law rule by virtue of title 14, Statutes 1925. It is my opinion that the articles pertaining to the issuance of license for the practice of law are embodied in articles 304 to 306, inclusive, and that they apply only to applications for license in the first instance. It is true that the latter part of article 306, Statutes 1925, provides that "no license to practice law in this State shall be issued by any court or authority, except by the Supreme Court of this State, under the provisions of this title." The words, "under the provisions of this title," refer to articles 304, 305, and 306. Article 304 merely provides in effect that there shall be a board of legal examiners appointed by the Supreme Court. Article 305 provides in effect that such board, under the directions of the Supreme Court, shall pass upon the eligibility of candidates for examination and examine such of these as may show themselves eligible therefor. Article 306 provides that "the Supreme Court is hereby authorized to make such rules as in its judgment may be proper to govern eligibility for such examination," and provides further that there must be a finding as to good moral character, adequate prelegal study, adequate study of the law, the legal topics to be covered by such study and by the examination given, and other requirements relative to the examination.

It is my view that neither the latter part of article 306 nor any other portion of the provisions of this title grant to the Supreme Court the power and authority to examine a disbarred attorney for new license or to reinstate his original rights enjoyed under the license first granted.

It is my belief that the common law imprisons this power of reinstatement with the court revoking the license, and that this court holds the situation within its own jurisdiction until a changed condition occurs and is properly presented, when, within its own conscience, it may adjudge a modification or change of its judgment, and that no authority is lodged by common law or statute in the Supreme Court or board of legal examiners to try and adjudge issues the result of which may overturn the judgment of the court. The question before the court is not one of who has authority and power to issue a license to practice law, but the power and authority to restore rights of an attorney whose license has been revoked and to change and modify, if within his judgment the facts indicate he should, the judgment originally issued. The authority to issue such license in the first instance reposes only in the Supreme Court. But, when a license is once issued, power and authority to revoke reposes by statute in a court of competent jurisdiction, and, when such court once enters his judgment revoking the license and no appeal is taken, it retains jurisdiction over such judgment to the exclusion of other courts and/or governmental agencies as declared generally, if not uniformly, by the decisions of the states making up the common law, the rule of decisions in Texas.

I cannot bring myself to concede that better reasoning applies to a construction of the statutes to the effect that the Supreme Court has the power or should have the power to either issue a new license to a disbarred attorney or issue any other order effective of the judgment of disbarment. The judgment of disbarment is a declaration of a judicial branch of the government, supreme within its power and within its fields, and should not be and is not subject to a change by the Supreme Court except through the regular channels of appeal. The Supreme Court has no jurisdiction, constitutional or statutory, to affect the judgment of the district court except through procedural methods. If the statute is construed to permit the Supreme Court to issue a license to appellant in the face of the judgment of disbarment, it would have the effect of setting aside the judgment of the court, and could be done at once after entry of judgment. I cannot satisfy myself that there is anything in the statutes indicative of such legislative intention. It is my

view that reason would not apply to the right of the Supreme Court to require the presence of witnesses to hear evidence and determine a changed condition or status of a disbarred attorney and thereby destroy the judgment of the district court. Better reasoning implies that under our system of government the power to procure witnesses, hear evidence, and determine factual issues, rests with the district court that declared the disbarment, which in my judgment is in accordance with the common law not abridged by statute in this state.

With every consideration and great respect, I must, in harmony with my judgment and for the reasons briefly outlined, dissent from the majority opinion.

### On Motion for Rehearing.

LATTIMORE, Justice.

██ Article 306, Rev. Statutes, says no license shall be issued except by the Supreme Court under the provisions of this title. Article 316, Rev. Statutes, says the judgment on disbarment may "revoke" the license "entirely." Revoke means to "annul by taking back." The license was taken back to its source, the Supreme Court. It could therefore by statute be issued only by the Supreme Court.

The motion for rehearing is overruled.

POWER, J., dissenting.