CANTOR *v.* GRIEVANCE COMMITTEES OF WASHINGTON COUNTY
AND CARTER COUNTY BAR ASS'NS. *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

Rehearing Denied February 10, 1950.

GEORGE N. BARNES, of Johnson City, JOHN W. KILGO, of Greeneville, for appellant.

J. R. SIMMONDS, McKINLEY GREEN, FRANK BRYANT, THOMAS E. MITCHELL and WILLIAM W. BELEW, all of Johnson City, GEO. C. EDENS, GUY FERGUSON and O. M. FAIR, JR., all of Elizabethton, for appellees.

LOUIS FARRELL, JR., of Nashville, and FRANK MONTGOMERY, of Knoxville, for *amicus curiae*.

538

MR. JUSTICE BURNETT delivered the opinion of the Court.

The question presented by the case is whether an attorney, disbarred under sub-section (1) of Code, Section 9974, may apply for reinstatement through the disbarring court or must be readmitted through the usual channels for a person seeking a law license.

This case has given us an unusual amount of concern. Much independent investigation has been made by us of the authorities in addition to the excellent briefs filed herein.

We find in the record an excellent memorandum opinion of the cause by the learned Chancellor, JOE W. WORLEY. We adopt both the reasoning and conclusion therein. His opinion reads as follows:

"This is a petition for reinstatement to membership in the bar, petitioner Moses E. Cantor having been permanently disbarred by decree of this Court dated July 30, 1938. The Bar Associations of Washington and Carter County were the relators in the original proceeding, made defendants here as agencies in interest, and now actively resist the granting of the petition. The cause is before the Court after extended argument on demurrer to the amended petition.

"There was a somewhat similar demurrer to the original petition, wherein defendants questioned the jurisdiction of this Court to reinstate petitioner after such a decree as disbarred him, and wherein they questioned also the sufficiency of the allegations to justify reinstatement, if proved. At the time of ruling on the original demurrer the Court felt that jurisdiction existed but reserved the question, and largely in order to ascertain the showing proposed to be made at the hearing, and to provide orderly procedure in the contest, sustained the demurrer and required the petitioner to amplify his pleading in accord with the specific directions contained in the decree. Defendants were granted leave to plead to the amended petition, and have demurred.

"It is presently enough to say that petitioner has plainly complied as best he could with the decree requiring amendment. The demurrer again raises question of the petitioner's sufficiency, that it reveals failure to make restitution to certain persons held in the disbarment proceeding to have been wronged by Mr. Cantor; that it contains no clear admission of wrongdoing in the matters on which disbarment was based, and shows no penitence therefor; that in certain particulars it evidences the lack of a proper ethical sense, and other related objections. There is much force in some of demurrant's arguments on these grounds, but the elements requisite to reinstatement of a disbarred attorney cannot be completely generalized, nor are they so definite and unyielding as to commend a dismissal on demurrer when the petition has any merit whatever. The injury is so necessarily individual and so intimately personal as to render the ultimate question not adaptable to decision on mere pleadings. The ruling on original demurrer may have

been misleading. It was primarily intended to limit the scope of the inquiry and to notify defendants more specifically of that which they might choose to defend.

"Demurrants have again raised and strenuously argued the jurisdictional objection in their demurrer to the amended petition, and on this point the Court has considered at length the arguments of all solicitors, the cases cited, and others available. Unfortunately nothing has been found in our state by way of statute or rule, reported cases or reference in a reported case, on the matter of reinstating an attorney once permanently disbarred.

"Code, Section 9974 sets out certain grounds for disbarment, in five categories, the first of which is:

" 'Any attorney . . . may be disbarred or suspended . . . . 1. Who shall commit or may have committed, any infamous crime or misdemeanor involving moral turpitude.'

"Code, Section 9975 reads:

" 'In cases arising under the first subdivision of the preceding section, the judgment of the court must be that the name of the attorney shall be stricken from the roll of attorneys, solicitors and counselors, and that he be excluded from practicing as such attorney or counselor in all the courts of this state; and, upon conviction, in cases under other subdivisions of the preceding section, the judgment shall be permanent or temporary deprivation of the right to practice law, or a censure or reprimand, according to the gravity of the offense.'

"It is at once apparent that the disbarment provided for offenders under the first subdivision is permanent. The finding of the offense is for the Court; the legislature has provided a penalty mandatory in terms.

''The memorandum opinion containing the Chancellor's findings is contained in the disbarment decree, and includes this language:

'As indicated they have gone so far as to manufacture evidence in order to win an important lawsuit, and in that they have already committed offenses and misdemeanors involving moral turpitude for which the statute provides disbarment with no discretion left to the Court to impose a penalty less severe.' (Opinion of Chancellor Ex. Orig. bill)

''The decree orders that:

'the defendants Moses E. Cantor and Herman N. Cantor and each of them, be and they are hereby permanently disbarred and that their names be permanently stricken from the roll of attorneys and that they and each of them be and they are hereby forever enjoined and prohibited from engaging in the profession of lawyers or in the practice of the law in any form or manner whatsoever directly or indirectly, in the State of Tennessee.'

''Petitioner was therefore disbarred on grounds arising under the first subdivision, among others. This decree was unappealed from, and of course is as final as a disbarment decree may be.

''The argument that this Court cannot, or should not, entertain the petition under these circumstances is based on dual grounds. First, it is said that the decree constitutes a permanent disability prescribed by the legislature and imposed by the Court, and that petitioner thereby became incompetent again to become an attorney, by any avenue. Or, in the alternative, it is urged that the decree at least completely deprived petitioner of the office of an attorney and left him a layman who must pur-

sue the avenue presently provided for new applicants in order to reenter the profession.

"It is very easy to confuse the two stated arguments, and hence the cases that bear on them. The *right* to reinstatement on proper showing is universally held to exist, but cases cited in support thereof may be entirely misleading when applied to the *method* of reinstatement. Before treating the cases it should also be osberved that many of the older ones having to do with reinstatement were decided when the examination and licensing of attorneys, as well as their admission, was quite generally done by the inferior Courts, so there could be little question of the proper *place* to apply. The new applicant, as well as the disbarred attorney, would then generally enter and reenter, respectively, before the same Court.

"The rule has been thus stated,

'The disbarment of an attorney is not necessarily a permanent disability; he may afterwards be reinstated on proper application on petition for that purpose, addressed to the Court by which he was disbarred, usually by motion and on a proper showing.' 5 Am. Jur., p. 443, and as to the *right* of reinstatement is fully supported by the cases. See also 6 C. J. p. 615; 48 A.L.R. 1243; [*In re Thatcher,* 83 Ohio St. 246; 93 N. E. 895], Am. Cas. 1912A, 813. The cases there cited, and many others, are directly opposed to demurrant's first position, that a judgment of disbarment constitutes a permanent disability rendering the defendant forever ineligible for readmission to the bar. Our legislature did not attempt expressly to impose such a disqualification, and one so drastic is not to be implied. The question of its constitutional right is not presented, and perhaps could not now be. Nor will the language of the decree of disbarment be construed to

impose a permanent disability on petitioner that prevents him from reentering the profession of lawyer through proper channels.

" 'Courts are interested in regeneration of erring attorneys, and it is not the policy of the law, nor is it in interest of justice, that a disbarred attorney should never be reinstated.' *Wettlin* v. *State Bar of Calif.*, 1944, 24 Cal. 2d 682, 151 P. 2d 255.

"The same state has upheld the constitutionality of a statute prescribing mandatory disbarment for one convicted of a felony or misdemeanor involving moral turpitude.

" 'It requires no argument to prove that the possession of this prerequisite (good moral character) to the receipt of, and continued exercising of the right or privilege of engaging in the practice of the law is a matter of such paramount public interest as to entirely justify the Legislature in prescribing that the commission of a crime involving moral turpitude, by one either seeking to obtain this right or privilege or thereafter exercising it, should constitute sufficient ground for its orginial denial or for its subsequent revocation.' *In re Collins* 188 Cal. 701, 206 P. 990 [991], 32 A.L.R. 1062, 1065-1066. Annotations, 44 L.R.A., N. S., 1195; 32 A.L.R. 1068 et seq.; 79 A.L.R. 38; *In re Kerl*, [32 Idaho 737], 188 P. 40, 8 A.L.R. 1259; *Jacobs* v. *State*, [200 Ga. 440], 37 S. E. 2d 187; 5 Am. Jur. p. 428. Both the California and Idaho statutes are almost identical with ours in material respects.

"While clear that the petitioner suffers no incompetency or ineligibility preventing his reentering the office of attorney, there remains the question of whether he should apply here, the Court wherein he was disbarred. Decision of this question necessitates consideration of

the nature of the decree of disbarment, whether it removed petitioner completely from the office of attorney, for all purposes, or whether it left an inchoate right that can be revived by this Courts' decree of 'reinstatement'. And assuming that the decree of disbarment left petitioner wholly denuded of his previous status as attorney, does there remain a continuing control in this Court over the decree so that he may be 'reinstated' without pursuing the path required for new applicants?

"In argument and brief solicitors for petitioners say that the decree did not take away his license to practice, but merely struck his name from the rolls and forbade him to use it. But as to the nature of the decree, they say 'That a petition for readmission of a disbarred attorney is not a continuation of the disbarment proceedings, but a new and independent proceeding, based upon the general jurisdiction of the Judiciary to Control Membership of the Bar.' Citing *In re Keenan*, 310 Mass. 166, 37 N. E. 2d 516, 137 A.L.R. 766. In the same case [310 Mass. 170, 37 N. E. 2d 519], 137 A.L.R. 771, it is held that, 'A final judgment of removal from such office rendered by a court of competent jurisdiction is binding upon all the courts of the Commonwealth and constitutes an adjudication that, at the time it was rendered, the attorney so removed was not a proper person to hold such office. A subsequent petition for admission to the bar involves a new inquiry as to whether, in the interval following the . . . judgment of removal, the petitioner has become a proper person to hold such office. *Bar Association of City of Boston* v. *Greenhood*, 168 Mass. 169, 183, 46 N. E. 568.'

"Petitioner Keenan, *In re Keenan, supra,* had been disbarred by the Massachusetts Supreme Judicial Court,

and petitioned for readmission to the Superior Court, the statute relating to applicants *generally* authorizing the filing of petitions for admission in *either* the Superior or Supreme Judicial Court. The opinion states [310 Mass. 168, 37 N. E. 2d 519] 137 A.L.R. 770: 'The present petitioner does not seek by his petition review of the final judgment of removal from his office as an attorney at law, but, in accordance with the statement just quoted, seeks *readmission* to the bar. *The present proceeding is a new proceeding for admission to the bar, subject to the limitations of procedure and substance resulting from the fact that the petitioner by final judgment has been "removed from the office of an attorney at law in the* Courts of this Commonwealth."   (Emphasis supplied.)' The Court proceeds to hold that the statute applicable to candidates for admission generally applies to petitioner Keenan, subject to such modifications in requirements as the Court might deem appropriate, allowing the Superior Court to proceed notwithstanding that the Supreme Judicial Court had by Rule provided special procedure for the readmission of disbarred persons, and that it was the disbarring Court.   The statute relating to admissions, as well as those relating to disbarment, are construed not as an unconstitutional interference with the judiciary but as ' "making provision in aid of the judicial department in reaching a proper selection of those qualified for admission as attorneys to practice in the courts" '.   [310 Mass. 173, 37 N. E. 2d 521], 137 A.L.R. 773.

"Cited as supporting the view adopted (that the application is for readmission and an entirely new proceeding) are *In re Newton*, 27 Mont. 182, 183, 70 P. 510, 982; *Vaughn* v. *State*] *Bar of California*, 208 Cal. 740, 742, 284 P. 909; *In re Lavine* 2 Cal. 2d 324, 328, 41 P. 2d 161

[42 P. 2d 311]. And as opposed in whole or part *Ex parte Peters,* 195 Ala. 67, 68, 70 So. 648; *In re King,* 54 Ohio St. 415, 417, 43 N. E. 686. Other cases in support of the opposing views are collected in accompanying note 137 A.L.R. 781 et seq.

"A Missouri case, In re H—— S——, (St. Louis Court of Appeals) [236 Mo. App. 1296], 165 S. W. 2d 300, is pertinent on the principle here involved. It also dealt with a petition for reinstatement of one permanently disbarred. Under Mo. R.S.A. Section 13316 the power to 'admit and license' persons to practice law lies only in the Supreme Court. The statutes also provide for 'disbarment', and for 'removal or suspension' of attorneys, in the latter class of cases providing, Mo. R.S.A. Section 13336 for a continued control of the decree by the disbarring Court, and reinstatement on proper showing 'at any time after one year from the date of such judgment of *removal or suspension'.*

"Treating the question of whether one permanently disbarred could be reinstated under Mo. R.S.A. Section 13336 the Court says (165 S. W. 2d 303): 'Did the Legislature mean by the proviso to Section 13336 that any attorney who had been permanently and finally "removed from practice" and his license revoked, that is, disbarred, could be reinstated and again licensed by this court or by a circuit court if the proceedings had been in a circuit court? Clearly not. When this court permanently removed respondent from the practice of the law and revoked his license, it would be absurd to say that this court could thereafter (after one year from the date of such judgment of removal) reinstate the attorney and also license him to practice law, in the face of the statute that the power to admit and license attorneys is vested ex-

clusively in the Supreme Court by Section 13316. . . . The statute does not confer upon this court the authority to "admit and license" a person to practice as an attorney, but it does authorize this court to remove an attorney from the practice of the law, which of necessity would include the authority to revoke his license. Therefore, it would be a meaningless and useless gesture for this court to entertain an application to reinstate this applicant, when we have no authority whatever to issue him a license as an attorney.'

"Referring to Mo. R.S.A. Section 13316, discussed *supra,* the Court says (165 S. W. 2d 302): 'The words "admit and license", as used in this section are inseparable and refer to the same thing . . . admission as a member of the bar . . . is consummated by the issuance to the applicant of a license, which is a certificate of his admission, and can be issued only by the Supreme Court.'

"The Texas Court of Civil Appeals in *Burns* v. *State* [Tex. Civ. App.], 76 S. W. 2d 172, held that the application for reinstatement of a permanently disbarred attorney should be to the Supreme Court, the licensing body, but this decision was reversed by the Commission of Appeals in *Burns* v. *State* [129 Tex. 303], 103 S. W. 2d 960, that Court holding that the application for reinstatement should be to the Court of disbarment, its decision supporting petitioner here. The decision cites several early cases, and quotes *Ex parte Peters,* 195 Ala. 67, 70 So. 648, 649, in support of the view adopted, but since the Texas Case *Ex parte Peters* has been abandoned by the Alabama Court *In re Stephenson* 243 Ala. 342, 10 So. 2d 1, 143 A.L.R. [166], 167. In this case the initial petition for reinstatement had been to the Circuit Court, the Court of disbarment, whose denial of it was affirmed on appeal.

548

The appellate Court in its holding said: ' "The application should be made *to the duly constituted authorities* to consider his present quality of mind, character, qualifications and fitness . . . " *Ex parte Stephenson*, 237 Ala. 488, 187 So. 461 (quoted [243 Ala. 344, 10 So. 2d 2], 143 A.L.R. 167).'

"It appears that after the decision last quoted the Supreme Court approved a rule providing for the filing of applications for reinstatement before the 'Board of Commissioners of the Alabama State Bar,' Rule C of 'Rules governing admission to the Bar of Alabama'. This rule, the Court says, 'supersedes the observation . . . set forth from the Peters case', (*Ex parte Peters, supra*) but adds ([243 Ala. 346, 10 So. 2d 4], 143 A.L.R. 170): 'It may well be observed that an application for reinstatement of an attorney, after the judgment of disbarment has become final, must be treated as an application for admission to the practice, and not as an application to vacate the order of disbarment. Such is the spirit as well as the wording of our decisions and rules that obtain. Such are the holdings of the general authorities. *In re Fleming*, 36 N. M. 93, 8 P. 2d 1063; *Danford* v. *Superior Court*, 49 Cal. App. 303, 193 P. 272, 274; *In re Cate, Cal.* App., 270 P. 968; In our cases—*Ex parte Peters*, 195 Ala. 67, 70 So. 648; *Ex parte Stephenson*, [195 Ala. 488, 187 So. 461].'

"The Alabama Court thus apparently construes its earlier decisions to have dealt with the general power of the Courts over reinstatement, and plainly last adopts the view that the disbarred attorney has been completely removed and must reenter under 'an application for admission to the practice.'

"*In re Stump,* [272 Ky. 593], 114 S. W. 2d 1094, contains the statement that 'a disbarred attorney's petition . . . will not be treated as an original application for admission to the bar . . .' but when examined in context this language has to do with the nature of the inquiry and the character and quantum of proof on reinstatement, not with the avenue of reentry, as evidenced, among other things, by the fact that the petition was filed in the Court of Appeals, pursuant to rule, and not in the disbarring Circuit Court.

"Cases wherein there is a conflict between Judiciary and Legislature in control over disbarment or reinstatement of attorneys such as *In re Phillips,* [17 Cal. 2d 55], 109 P. 2d 344, 132 A.L.R. 644, and *Ex parte Redmond,* [120 Miss. 536], 82 So. 513, *In re Conner,* [ Mo. Sup.], 207 S. W. 2d 492 cited for petitioner, are not in point. The power of the Judiciary over the bar is not in question, nor to be abdicated. Rather it is a question of which portion, or agency, of the judiciary, shall exercise that undoubted power. Cf. *In 're Rickey,* 149 Tenn. 344, 382 [258 S. W. 417].

"In searching our decisions for some clue to the attitude of the appellate Courts on the nature or scope of a decree of disbarment it has been noted that in *State Board [of Law Examiners]* v. *Shimer,* 131 Tenn. 343, 351 [174 S. W. 1142], the Court refers to its power to revoke an attorney's license under the Act of 1903, for fraud in the procurement, as 'broader' than the power under a petition to 'strike from the rolls' under the then disbarment statute, Shannon's Code, Sections 5781 and 5783.

"In *Ingle* v. *Kivett,* [30 Tenn. App.1], 201 S. W. 2d [545], 546 [550], the Chancellor had entered a decree

permanently striking the name of the defendant from the list of members of the bar and prohibiting him from practicing law in the state, the Court on appeal remarking: 'The charges in this case come within Subsections (1) and (5) of Section 9974 . . . The decree of the Chancellor permanently disbarring the defendant is affirmed.'

" In *State* v. *Bomer*, 179 Tenn. 67 [162 S. W. 2d 515], the trial Court decree affirmed was that the defendant '*should be permanently disbarred and deprived of his license to practice law*' ([179 Tenn.] page 74 [162 S. W. 2d page 518]). And in *Davis* v. *State*, 92 Tenn. 634 [23 S. W. 59], the trial Court's judgment affirmed included '*that he be deprived of his license and the right to practice his profession in any Court of record in this State.*'

"The argument that the decree in the instant case did not avoid petitioner's license, in terms, leaving it dormant to support a present decree of reinstatement, is fictional. There can be no distinction of substance made between the decree we consider and those in the last cited cases. There is but a different choice of words to accomplish a clear and common purpose.

"If it be true that petitioner's status as an attorney was completely removed by the former decree, which his solicitors concede cannot now be modified or vacated, the second stated contention of defendants is sound and he must come to the bar like an original applicant, (subject to such modifications as the licensing Court may prescribe). Only one avenue is provided by statute and rule of Court. Code, Sections 9970, 7113 et seq.; Supreme Court Rules, Rule 37.

"Code Section 7113a includes: 'The supreme court shall prescribe rules to regulate the admission of persons to practice law and providing for a uniform system of examinations, which shall govern and control admission to practice law, and such board in the performance of its duties.'

"Rule 37, *supra,* provides, Section 1: A license to practice law in the Courts of this State shall be granted by this Court only upon the certificate of the State Board of Law Examiners in accordance with Sections 7113 to 7116 inclusive, and Section 9972 of the Code of 1932. *No one shall practice law in this State except upon a license issued thereunder and in accordance with these Rules.'* (Emphasis supplied.)

"The remark of the Court addressed to Chap. 247, Acts 1903, *In re Bowers,* 138 Tenn. 662, [200 S. W. 821, 822], is as well appropriate to the Rule just quoted: '. . . it will be perceived that there is no other way for one to be admitted to the practice of the law than the way set forth by the Legislature in the act.'

"See also *In re Bowers,* 137 Tenn. 189 [194 S. W. 1093; Id., 137 Tenn. 193], 194 [192 S. W. 919].

" 'A statutory provision for examination for admission to the bar, even though confined to an examination into the acquirements and qualifications of the applicant other than his moral character, is as applicable to a petition by one previously disbarred as to a petition by an original applicant.' *In re Keenan, supra* [310 Mass. 166, 37 N. E. 2d 516], 137 A.L.R. at [page] 768.

"The conclusion indicated has been reached after earnest consideration, in recognition of the importance of the question to the parties, especially petitioner, and after an initial contrary view by the Court. I am not un-

mindful that important considerations of policy are involved that could be deemed controlling in an open question on which the authorities elsewhere are divided. But if policy be thought to call for a different conclusion this Court is not that which should formulate and weigh it. The reasoning in the late cases herein referred to has made the result reached the only one logically acceptable, giving the disbarment decree the effect to which it is entitled and having regard for our presently existing procedure governing the licensing and admission of attorneys.

"The demurrer must be sustained, and the decree may so provide, dismissing the petition at petitioner's cost, but without prejudice to the merits of his application."

■ Supplying what is so well said above, we think that Code, Section 9543 should be read in conjunction with the Code sections referred to in the Chancellor's opinion. This section provides in substance that when an attorney has collected money which cannot be collected from him that he "shall thenceforward be disqualified to practice in the courts of this state *until the debt is paid.*" (Italics ours.) This language clearly indicates that an attorney thus guilty must make restitution of money wrongfully withheld before he can be reinstated to practice. The implication also is that he may under this wrong make such an application, i.e., for reinstatement. The second portion of Code, Section 9975, above quoted, applies to a case, among others, where money is wrongfully withheld.

■ It seems to us, considering what we have said above, in the light of the second portion of Code, Section 9975 that an attorney who is disbarred for violation of subdivisions (2), (3), (4) and (5) of Code, Section 9974

has the right to apply to the disbarring Court for reinstatement.

■ An attorney guilty of violation of subdivision (1) of Code, Section 9974 is placed in a different category by the first portion of Code, Section 9975. The name of an attorney guilty under this subdivision of the statute must "be stricken from the roll of attorneys, etc.", that is, the Court hearing the disbarment case *"must"* remove, efface and cancel his name from the roll of attorneys, etc. The appellant was so found guilty over ten years ago. By force of this statute such a finding necessarily removes his name from the roll of attorneys, etc.

The legislature must have had some purpose in specifying the two types of punishment. In the second portion of the statute the judgment may be either permanent or temporary deprivation of the right to practice. Under the first portion of the statute his license is annulled and ceases to exist. His license is merely a right or franchise to practice law. When his name is "stricken from the roll" it is removed, effaced and cancelled. He stands just as though he never had a license.

Under the second portion of the statute he is merely enjoined from the practice. Under such circumstances the court granting the injunction "may open or modify the same where the circumstances and circumstances of the parties are shown to have so changed as to make it just and equitable to do so." 28 Am. Jur. p. 495, Section 323.

For these reasons the decree of the Chancellor must be affirmed with costs.

All concur.

OPINION ON PETITION TO REHEAR

A courteous and dignified petition to rehear has been filed herein. This petition does not question our finding but asks for clarification or specification.

We held that a disbarred attorney may apply to the disbarring court when his disbarment is based on violation of subdivisions (2), (3), (4) and (5) of Code, Section 9974; that he must seek readmission to practice law through the Board of Law Examiners when he has been held guilty of the violation of subdivision (1) of Code, Section 9974; and that an attorney guilty of misappropriating the funds of his client must make restitution of such funds before he can be reinstated. In one instance this restitution should be made to appear to the Board of Law Examiners while in the other instances this restitution would have to be shown to the Court wherein application for reinstatement is made.

With this clarification the petition must be denied.