Moses E. CANTOR, Appellant-Appellee,

v.

James E. BRADING, President, Washington County Bar Association, et al., Appellees-Appellants.

Herman N. CANTOR, Appellant-Appellee,

v.

James E. BRADING, President, Washington County Bar Association, et al., Appellees-Appellants.

Court of Appeals of Tennessee, Western Section.

Jan. 22, 1973.

Certiorari Denied by Supreme Court April 16, 1973.

Bernard H. Cantor and Paul J. Sherwood, Johnson City, for appellants-appellees Moses E. Cantor and Herman N. Cantor.

Earnest R. Taylor, Morristown, for appellees-appellants James E. Brading, President, Washington County Bar Association, and others.

NEARN, Judge.

This appeal involves two separate actions which, because of their nature, were tried together. The actions were brought under the authority of § 29–310 T.C.A. by two former lawyers who had been permanently disbarred and "forever enjoined and prohibited from engaging in the profession of lawyers or in the practice of the law in any form or manner whatsoever directly or indirectly, in the State of Tennessee". See Cantor v. Grievance Committees (1949) 189 Tenn. 536, 226 S.W.2d 283.

Section 29–308 T.C.A. provides that any attorney may be disbarred or suspended from the practice of law "(1) Who shall commit or may have committed, any infamous crime or misdemeanor involving moral turpitude." Appellants were disbarred under the quoted sub-section (1).

Prior to the meeting of the 1971 General Assembly of this State § 29–310 T.C.A. provided as follows:

"*Penalties for violations.*—In cases arising under the first subdivision of § 29–308, the judgment of the court must be that the name of the attorney shall be stricken from the roll of attorneys, solicitors and counselors, and that he be excluded from practicing as such attorney or counselor in all the courts of this state; and, upon conviction, in cases under other subdivisions of § 29–308, the judgment shall be permanent or temporary deprivation of the right to practice law, or a censure or reprimand, according to the gravity of the offense."

The 1971 General Assembly of our State, by its Chapter 269, amended § 29–310 T.C.A. so that it now reads as follows:

"*Penalties for violation.*—In cases arising under the first subdivision § 29–308 the judgment shall be permanent disbarment; and upon conviction, in cases under the other subdivisions of § 29–308, the judgment shall be permanent or temporary disbarment, or a censure or reprimand, according to the gravity of the offense.

In all cases wherein an attorney has been permanently disbarred and after the expiration of eight (8) years, any such attorney shall have the right to apply for reinstatement as a practicing attorney to the court before which said disciplinary action was taken or any other court of competent jurisdiction in the county wherein the applicant has resided for the next two (2) years preceding his application; a copy of the application shall be served upon the president of the state bar association, and upon the president of the local bar association in the county wherein the applicant has resided for the next two (2) years preceding his application, and they shall be named as defendants or respondents and may file objections to the application within the time prescribed by law for the filing of an answer or other pleading, and they may request a hearing on the merits; the court may, upon a showing that such attorney is a proper person to be entitled to the privilege of practicing law, reinstate such attorney. An attorney whose application for reinstatement has been denied after making application under the provision of this section shall not be permitted to reapply for reinstatement for a period of two (2) years following denial of his original application for reinstatement. Any further application for reinstatement shall be before the court in which the original application was made."

The effective date of the foregoing Act was May 11, 1971. Moses E. and Herman N. Cantor, who are brothers, both filed separate petitions in the Chancery Court at Johnson City on June 7, 1971, each seeking a Decree of Reinstatement. Pursuant to the terms of the Act, service of process was had upon the chief executive officers of both the Tennessee Bar Association and the Washington County Bar Association. The causes were consolidated for trial. By interchange and by designation, Chancellor Len G. Broughton, Jr., sitting at Knoxville, heard the matters. The Bar Associations filed Motions to Dismiss which alleged and charged among other things that the 1971 Act was unconstitutional.

With the exception of that part of the Motion attacking the residency of Herman N. Cantor, which part was not specifically overruled but taken under advisement, the Motions to Dismiss filed by the Bar Associations were denied by the Chancellor, from which Order a Discretionary Appeal was prayed and likewise denied. The Bar Associations answered and denied that pe-

titioners were entitled to the relief sought. In setting the matters for trial, the Chancellor, for an orderly procedure of the cause, declared certain guidelines for the type of proof that would be required to be presented for his consideration in passing on the propriety of granting the relief sought. The Chancellor further ordered that before the matters would be heard the petitioners would be required to take a bar examination before the Clerk and Master of the Court. The bar examination given was selected from one of those given in the last four years by the Board of Bar Examiners to law license applicants.

The Chancellor then heard the matter on oral proof and depositions including proof from Mr. Hugh Shelton of the Board of Bar Examiners that both petitioners had passed the bar examination given by the Clerk and Master.

The Chancellor denied to both the relief sought.

The Chancellor denied the relief to petitioner Herman N. Cantor on the grounds that petitioner failed of the residency requirements; since the proof showed that Herman N. Cantor was, at the time of the hearing, and had been a citizen and resident of New York State since late 1939.

As to the petitioner, Moses E. Cantor, the Chancellor denied relief on the basis that petitioner had failed to carry the burden of proof of showing that he was a proper person to be entitled to the privilege of practicing law.

Counsel for the Cantors has filed eighteen Assignments of Error with this Court. Counsel for the Bar Associations have filed three Assignments of Error, but the Bar Association's Assignments of Error together raise but one issue, and that is the constitutionality of § 29–310 T.C.A. It is argued that the Code section is an encroachment by the legislative department upon the function of the judicial department of government.

The constitutional issue is controlling.

Sections 1 and 2 of Article II of the Constitution of Tennessee are as follows:

"Sec. 1. Division of powers.—The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

Sec. 2. Limitation of powers.—No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

Is admission to the bar a subject which falls within the powers of the judicial branch of government; or is it one that falls within the legislative branch? As far as we are able to ascertain, this question in this form has not been heretofore expressly put to a Court of this State and consequently has not been expressly answered.

If the matter of the admission of an attorney to the bar is an exercise of a judicial power, that power lies with the Supreme Court and constitutionally cannot be interfered with by the legislative department of the tripartite government of this State. Conversely, if the power is in the legislative department, the judicial department may not encroach upon the prerogative of the Legislature. Article II, Section 2, Constitution, State of Tennessee.

If it is an exercise of a judicial power, we say that the ultimate power lies with the Supreme Court because that Court is the constitutional embodiment of that power. Article VI, Section 1 of our Constitution provides that the judicial power of the State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature may establish. Therefore, constitutionally, all other courts are inferior to the Supreme Court and the judicial power of this State flows from the Supreme Court to inferior courts as aids to the Supreme Court in the administration of justice so that judicial remedy and the exercise of that power will

be conveniently available to all citizens of this State.

This embodiment of supreme judicial and judicial supervisory power is an inherent power of the Supreme Court and has been so recognized by the legislative branch of our government. Section 16–331 T.C.A. recognizes that the Supreme Court has the power to take *all* action as may be necessary to the orderly administration of justice within the State, whether or not enumerated in that code section or elsewhere. Section 16–332 T.C.A. declares that this power is of common law origin as it existed at the time of the adoption of our Constitution.

That the admission of attorneys is a judicial power is not a new concept. Smith v. State (1829) 9 Tenn. 228, is an early case that dealt with the inherent powers of the Court to strike an attorney from the rolls. In that case the Court traced back, both the power of appointment and the power of removal of attorneys, for over four hundred years to the law existent at the time of Henry IV which provided that the justices, being satisfied, shall enroll an attorney and, if later, he is found to be in default of record or otherwise unfit, shall strike him from the rolls of attorneys. So, it would seem to us that there is nothing novel in the idea that the exercise of the power of admission to the rolls lies with the judiciary.

In Lawyers' Tax Cases (1875) 55 Tenn. 565, the Legislature sought to tax the privilege of practicing law with forfeiture of the law license being the penalty for non payment of the tax. A majority of the Court held that the act seeking to tax the lawyer's right to practice law was unconstitutional. It was reasoned that lawyers were officers of the Court, indispensible to its operation and, in fact, were a part or arm of the judicial department in the same sense as the clerks and recorders of the House and Senate are a part of the legislative branch of government. Although neither the officers of the Legislature nor of the Court possess any of the powers of that branch of government they assist, they are indispensible to the operation thereof. If the power to tax an indispensible officer of the judicial branch of government on pain of forfeiture of office lies with the legislative branch of government then such possessed power would amount to the power to prohibit or destroy the office, with the result that the legislative branch would have the potential power to destroy the judicial department of government. Constitutionally, this cannot be so and the Court so held.

More recently, in Petition for Rule of Court, etc. (1954) 199 Tenn. 78, 282 S.W.2d 782, the Supreme Court concluded that in the matter of the admission and supervision of members of the bar, its powers were, original rather than appellate. The Court was impelled to that conclusion on the long adopted premise that Courts have the inherent power to prescribe qualifications for the practice of law and that the State court of highest authority is the repository of that power possessed by the judicial department. The Court did not answer the question of whether or not the statute in question in that case impinged upon the authority of the judicial department; for the Court declined to exercise the authority petitioned to be exercised by the Bar Association of Tennessee. This declination, it must be noted was made after consideration of the facts involved. The denial of the petition was not made on the basis of lack of authority or statutory prohibition. However, the Court did note that the departments of our government are interdependent upon one another. Just as the Legislature could not successfuly operate without courts to enforce the laws promulgated, the judicial department could not properly operate without aid from the Legislature. The Court further noted that the Legislature was not without authority in the field of the practice of law when it stated:

"Requiring qualifications for the practice of law is, as we have seen, a field in

which both the legislative and judicial departments of our State may enter. The extent to which the Legislature may go in such field seems to depend upon whether a particular statute enacted by it in this field is a reasonable exercise of the police power of the State. The judicial department, in the exercise of its inherent authority, may require more of the officers of its Courts."

The Court also established the criteria to be kept in mind in considering acts of the Legislature in that field, when it stated "that it is one thing for a statute to say that individuals must have certain qualifications in order to practice, but an entirely different thing for the statute to say that individuals need not have certain qualifications in order to practice." This can only be because such a statute could be in conflict with the Court's declared requirements.

It would appear to us that statutes in the nature of §§ 29–101, 29–102, 29–103, 29–104 and 29–105 T.C.A. are designed merely to prevent undesirable persons from being admitted to the Bar in this State and would generally fall in that category of permissible legislative venture spoken of by the Court in *Petition for Rule of Court etc.*, supra. Indeed, §§ 29–103, 29–104 and 29–105 T.C.A. expressly recognize and preserve the inherent power and authority of the Supreme Court of Tennessee to prescribe and administer rules to regulate the admission and licensing of persons to practice law in the courts of this State.

On May 12, 1971, certain members of the bar of this State again petitioned the Supreme Court for unification of the Bar. In re Adoption of Rule of Court, etc. (1972) Tenn., 479 S.W.2d 225. Again, the Court denied the petition. The denial was not based on lack of authority to hear the petition, for the per curiam portion of the opinion denied the petition without prejudice. As we read it, the denial was based on the fact that the proof showed no difficulties which were the proper subject of the exercise of the inherent powers of the Court, as the facts involved had not materially changed since the prior petition. Justice Humphreys filed a separate concurring opinion to the per curiam opinion of the other members of the Court. The main point raised in the opinion of Justice Humphreys, as we read it, is that the unification of the bar or the lack thereof, in either event, is not a condition necessary to the operation of the Supreme Court which would require the Court to act under its constitutional powers. Justice Humphreys made it clear, that the Supreme Court would suffer no abridgment by the Legislature of its constitutional powers to regulate the bar in the practice of law, for he stated that should it ever be necessary in the constitutional sense to the functioning of the Court that the bar be unified, he would support the right of the Court to so decree even in face of a legislative act to the contrary.

■ We hold that admission to the bar of this State is a subject which falls within the powers of the Judicial branch of government which is embodied by our Supreme Court.

Such holding does not, *ipso facto*, render T.C.A. 29–310 unconstitutional for as pointed out by the Supreme Court in *Petition for Rule of Court, etc.*, supra, the Legislature is not totally without authority in that field. Whether or not the act in question is constitutional depends upon whether the effect of the act is to furnish aid or to contravene the orders and obstruct the operation of the Court in its necessary and constitutional function of admitting and supervising its officers.

Before determining the effect of the act we must first determine the status of the Cantors, that is, whether they remained lawyers after their disbarment or reverted to the status of laymen.

It is the position of the Cantors that once a lawyer is licensed, he is forever a licensed lawyer, and although his privileges may be suspended by proper authority, he never

ceases to be a lawyer. Therefore, it is argued, proper authority may "reinstate" the privileges of the lawyer, even though his disbarment or suspension was declared to be permanent.

We cannot agree with this position of the petitioners, as we do not believe the privilege of practicing law should be viewed in the same light as the unalterable priestly status of Melchizedek. In Cantor v. Grievance Committees, supra, the Supreme Court in affirming the lower court, adopted the opinion of the Trial Court which quoted approvingly from In re Stephenson, 243 Ala. 342, 10 So.2d 1 as follows:

> "It may well be observed that *an application for reinstatement* of an attorney, after the judgment of disbarment has become final, *must be treated as an application for admission to the practice, and not as an application to vacate the order of disbarment.* Such is the spirit as well as the wording of our decisions and rules that obtain. Such are the holdings of the general authorities." (citing authorities) (emphasis ours)

The Trial Judge in his opinion then concluded as follows:

> "If it be true that petitioner's status as an attorney was completely removed by the former decree, which his solicitors concede cannot now be modified or vacated, the second stated contention of defendants is sound and *he must come to the bar like an original applicant,* (subject to such modifications as the licensing Court may prescribe). Only one avenue is provided by statute and rule of Court. Code Sections 9970 (T.C.A. § 29–108), 7113 et seq. (T.C.A. §§ 29–101, 103); Supreme Court Rule 37." (emphasis ours)

It is our opinion that, in the Cantor case, the Supreme Court clearly announced the status of a permanently disbarred attorney, when, after having quoted the Trial Court, Justice Burnett, speaking for the Supreme Court stated: *"He stands just as though he never had a license."*

■ Therefore, we conclude and hold that the petitioners in this case, since their permanent disbarment, have held the same status as non-lawyers, that is, those to whom licenses to practice law had never been issued.

The Supreme Court has by Rule 37 designated the manner in which those who occupy non-lawyer status and seek a license to practice law, are to go about it. Rule 37 at the outset provides: "A license to practice law in the Courts of this State shall be granted by this Court only * * *".

The true effect of § 29–310 T.C.A. is to empower the Trial Court to issue a license to practice law to one who occupies the status of never having practiced law. Therefore, if § 29–310 T.C.A. is given effect, it will contravene and nullify the rules of the Supreme Court regarding the admission of attorneys and the issuance of a license. This is the type of prohibited legislation spoken of by the Court in *Petition for Rule of Court*, etc., supra, when it stated "but (it is) an entirely different thing for the statute to say that individuals need not have certain qualifications in order to practice."

Clearly, in enacting Chapter 269 of the Acts of 1971, amending § 29–310 T.C.A., the Legislature failed to recognize that only the Supreme Court of this State is empowered and authorized to grant a person a license to practice law in this State. Moreover, by thus rewriting § 29–310 T.C.A. the Legislature not only undertook to vest trial courts with a power and authority belonging to the Supreme Court exclusively, but also sought to fix a definite length of time that permanent disbarment shall continue (eight years), and thereby to prohibit the Supreme Court from considering granting admission and a license to a disbarred individual during that period, notwithstanding that during that time such person may have met the qualifications for those desiring to practice law, taken and passed a prescribed

bar examination and have been duly certified to the Supreme Court by the State Board of Law Examiners. Plainly, then, for a period of eight years following final decree of disbarment, the statute as presently constituted, strips the Supreme Court of its right to exercise its inherent power to consider the qualifications of a formerly disbarred person and to determine whether to grant him a license and admit him to practice law again. This usurpation by the Legislature of the inherent and exclusive power of the judiciary is constitutionally forbidden.

■ Therefore, we hold that § 29–310 T.C.A. constitutes an attempted exercise by the legislative branch of government of those powers properly belonging to the judicial branch of government. It is violative of Section 2, Article II and Section 1, Article VI of the Constitution of this State, and therefore void.

The Chancellor, for reasons different than ours, denied and dismissed the petitions. He decided the matter on the facts. As is our duty, we have reviewed this entire record and we concur in the Chancellor's factual findings that Herman N. Cantor fails of residency requirements and that Moses E. Cantor failed to carry the burden of proof of showing that he was a proper person to be entitled to the privilege of practicing law. Possibly, by not considering the appeal of the Bar Associations we could have affirmed the Chancellor by our concurrence in his factual finding and, temporarily at least, put the matter to rest. However, to do so, in view of our firm opinion that the entire procedure from its inception was void because of the unconstitutionality of the act would, we think, require less than complete intellectual honesty on our part. Therefore, we affirm the results reached by the Chancellor in dismissing the petitions, but for a different reason.

Judge W. Wayne Oliver of the Criminal Court of Appeals, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Presiding Judge C. S. Carney, Jr.

Costs of appeal are adjudged against petitioners below and the sureties on their respective bonds.

So order.

OLIVER, Judge, Criminal Court of Appeals, and MATHERNE, J., concur.