In re Application of Morton J. Dimenstein

Superior Court     Judicial District of     File No. 160312
New Haven

42

Memorandum filed July 3, 1979

*Joseph B. Morse,* for the grievance committee of the judicial district of New Haven.

QUINN, CIOFFI, DUPONT, Js. This is an application for reinstatement to the bar by Morton Dimenstein, who was disbarred in December, 1968. He had been sentenced to prison for a term of two to five years, after pleading guilty to a charge of conspiracy to bribe a public official. Prior to that time, he had been practicing law for eleven years. He was released on parole in April, 1970. It is the third application for readmission filed by the applicant as of record appears. The status and history of the prior applications have no bearing on this panel and its ultimate decision.

A hearing on the present application was held before the New Haven standing committee on recommendations for admission to the bar, and its report was filed, favorable in its findings, regarding the applicant's conduct and character. The committee, however, declined to recommend reinstatement because the 1968 order of disbarment stated that the applicant was "permanently" disbarred. The initial issue before this court involves the meaning of the term "permanently" as used in the disbarment proceedings. More particularly, the question is whether "permanent" disbarment forever precludes the applicant from gaining readmission

to the bar. Although the statutes and case decisions of Connecticut make it clear that disbarment is a recognized disciplinary procedure, the precise issue of the instant case has not previously been decided.

Disbarment of attorneys is provided for in § 51-84 of the General Statutes, which states that "attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act, which may fine them for transgressing such rules and orders, not exceeding one hundred dollars for any offense, and may suspend or displace them for just cause." Section 29 of the 1978 Practice Book provides that "[t]he superior court may, for just cause, suspend or disbar attorneys . . . ."

The courts, in interpreting § 51-84, have distinguished suspension from disbarment. Inherent in suspension is a fixed time period for the inability to practice law; *Grievance Committee* v. *Sinn,* 128 Conn. 419, 422; whereas disbarment is equivalent to an indefinite hiatus in the practice of law. *In re Application of Koenig,* 152 Conn. 125, 131–32.

The above quoted statute is devoid of any reference to gradations of disbarment. Neither it nor the Practice Book distinguishes between permanent disbarment and some lesser degree of disbarment, implying instead that every suspended or disbarred attorney may seek reinstatement. "Any application for reinstatement or readmission to the bar shall be referred, by the court to which it is brought, to the standing committee on recommendations for admission . . . ." Practice Book, 1978, § 36. At one time, the reinstatement procedures of the Practice Book did distinguish between persons suspended for failure to pay certain bills and those suspended or disbarred for other reasons. This suggests that had the authors of the present sec-

tion wished to create a distinction between permanent as opposed to some lesser category of disbarment, they could have done so.

Although there is no Connecticut case which has addressed the issue of the present case, other states have reviewed the question of the meaning and impact of the term "permanent" in the context of a disbarment order. Those decisions uniformly negate the concept of an absolute or irrevocable disbarment, and construe the word "permanent" as meaning "indefinite," until circumstances warrant a change. Even in those jurisdictions which, unlike Connecticut, provide by law for permanent disbarment for some crimes, extreme caution is exercised before concluding that "permanent" means forever. Although disbarment is not punishment for a crime, but, rather, the withdrawal of a privilege, it cannot be denied that the requirement of permanent, irrevocable disbarment, is, in effect, a consequence so severe that it partakes of the nature of punishment, and a statute providing for the same must be interpreted in the light of the fundamental canon that penal statutes must be strictly construed. *Matter of Donegan,* 282 N.Y. 285, 292; *Matter of Rouss,* 221 N.Y. 81. A Mississippi statute provides that a disbarred attorney "shall never afterward be permitted to act as an attorney or counselor in any court of this state," and there is no statutory provision for reinstatement. Miss. Code § 223 (1906). Despite this language and the lack of a procedure for reinstatement, the Mississippi Supreme Court has held that, although a disbarred attorney may not practice while the judgment of disbarment stands, that judgment may be opened if in the opinion of the court reinstatement is warranted. *Ex parte Redmond,* 120 Miss. 536. Thus, even the "never afterward" language of the statute was found not to preclude readmission.

A Tennessee case addresses the question of reinstating two attorneys whose disbarment order stated that " 'the defendants . . . be and they are hereby permanently disbarred, and that their names be permanently stricken from the roll of attorneys and that they and each of them be and they are hereby forever enjoined and prohibited from engaging in the profession of lawyers or in the practice of law in any form or manner whatsoever directly or indirectly, in the state of Tennessee.' " *Cantor* v. *Grievance Committees,* 189 Tenn. 536, 541. The court held that the right to reinstatement was not denied, in spite of the language of the disbarment order. See also *Matter of H— S—,* 236 Mo. App. 1296.

Courts in Kentucky and Texas have also examined the question of whether disbarment is a permanent disability, and have answered it in the negative. *In re Stump,* 272 Ky. 593; see also *Burns* v. *State,* 76 S.W.2d 172 (Tex. Civ. App.). It is a well settled principle that disbarment is not res adjudicata or necessarily permanent, and that a disbarred attorney may be reinstated for reasons satisfactory to the court. See 5 Am. Jur., Attorneys at Law § 301; 6 C.J., Attorney and Client § 97; 7 C.J.S., Attorney and Client § 41.

The applicant here relies on the recent Florida case of *In re Rassner,* 265 So. 2d 363. In *Rassner,* the court echoed the reluctance noted in the *Donegan* and *Redmond* cases, supra, to find an irrevocable disbarment. "We deny a motion of the Florida Bar contending that because petitioner was permanently disbarred he is forever precluded from seeking reinstatement and being reinstated. It is our view that a former attorney, whether 'permanently' disbarred or permitted to resign on the condition that he will never seek reinstatement is not thereby forever

precluded at some future date from seeking reinstatement." *In re Rassner,* supra, 363. Similar statements were made by a federal court hearing an appeal from a judgment of disbarment. "[A]lthough the order is permanent in form it is not irrevocable. It does not necessarily prevent the appellant from reinstatement upon proof of 'a sincere and timely change of attitude.'" *Levenson* v. *Mills,* 294 F.2d 397, 399 (1st Cir.), cert. denied, 368 U.S. 954.

Finally, courts have looked to public policy to determine whether a disbarment should be irrevocable. "It is not the policy of the law, and is not considered to be in the interest of justice, that an attorney who has been disbarred for misconduct *shall never under any circumstances be readmitted to practice.*" (Emphasis added.) *In re Nisbet,* 77 Cal. App. 260, 261. "[I]t is not the policy of the law, nor is it in the interest of justice, that an attorney who has been disbarred shall never be readmitted to practice." *Wettlin* v. *State Bar,* 24 Cal. 2d 862, 868.

The circumstances surrounding the applicant's disbarment underscore the need for construing the term "permanent" as meaning something less than irrevocable, as it was construed by the courts in *Redmond, Rassner, Levenson* and *Nisbet.* This interpretation is reinforced by Connecticut law, which provides no basis for distinguishing between revocable and irrevocable disbarments. It is also implied by the reinstatement provisions, which place no qualifications on who may make application for reinstatement. Furthermore, the purpose of disbarment would not be served by an irrevocable order. Disbarment and suspension from practice are not a means of punishment, but are steps taken by the court for its own protection and for the protection of the public from the misconduct of

untrustworthy practitioners. The ultimate question is the present fitness of the applicant for reinstatement. *In re Kone,* 90 Conn. 440, 442.

In the present case, the purposes of disbarment have already been served. The applicant's present conduct demonstrates the requisite reformation of character to entitle him to resume his role as attorney.

Application granted.