CHAFFIN *et al. v.* ROBINSON *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

SAMUEL N. HARWOOD and LOUIS FARRELL, JR., both of Nashville, for appellants.

H. FRANK TAYLOR and LEWIS C. PAYNE, both of Nashville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The parties by bill and cross bill sued each other over a small strip of land between their properties. The Chaffins won below. On appeal to the Court of Appeals that Court reversed and entered in that court a decree enjoining the Chaffins, their heirs, assigns, servants, agents, tenants and representatives ''from putting stakes or markers on said strip of land, or in any way interfering with Mrs. Robinson's possession thereof.'' No remand was ordered. This injunction was and remained an order of the Court of Appeals. The above order was entered in 1942.

On October 21, 1947, Mrs. Robinson filed her petition in the Court of Appeals seeking to have the Chaffins, certain named children of the Chaffins, and others who had purchased this property, declared in contempt of that court for violating its injunctive order.

The Court of Appeals dismissed this petition because: (1) new parties were involved (the assignees of the Chaffin's); (2) ''the injunction in this cause operates *in personam*''; and (3) ''the jurisdiction of this court is appellate only.''

Due to the importance of the question in appellate procedure and practice we have heretofore granted *certiorari*. The case has been ably briefed and argued by both sides, and we have given the question much independent investigation and thought.

. Obviously from what has been said above, the question is whether or not an intermediate appellate court, and incidentally the ultimate appellate court, has the power to enforce its injunctive orders when there is an alleged violation by parties who were not parties to the original suit.

In *State ex rel.* v. *Hebert*, 127 Tenn. 220, 237, 240, 154 S. W. 957, 962, this Court said:

"The power to enforce its final judgment is inherent in all courts, since without this power the courts themselves would be unable to effect the ends for which they were designed. This power not only inheres in all courts as a constituent part, but in this State is recognized and guaranteed by statute. Shan. Code, sec. 5911, (Now Code 10110,) subsecs. 3, 4, and 6. This section reads: 'Every court has power . . . (3) to compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding therein; (4) to control in furtherance of justice, the conduct of its officers, and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto; . . . (6) to control its process and orders.' One instrument pointed out is (section 5912), (Now Code 10111): 'For the effectual exercise of its powers, every court is vested with power to punish for contempt, as provided for in this Code.' In addition it is provided in respect of the Supreme Court (section 6336), (now Code 10637): 'This court may issue all writs and process necessary for the exercise and enforcement of its jurisdiction.' . . .

"These powers of the court are exercised only in *aid of its appellate powers*. The powers of the court are declared in the Constitution to be appellate only, with the exception and addition that 'it may possess such other jurisdiction as is now conferred by law on the present Supreme Court.' Const., art. 6, sec. 2. The same provision is found in the Constitution of 1834. This has been construed to mean power '*to adopt such proceedings, issue such process, and try such facts as might become necessary to carry out and perfect its own judgments, and decrees, in cases before it by appeal or writ of error.*' (Citing authorities).

"This construction is too narrow, or at least is capable of being understood in too narrow a sense, by reason of the last clause—'in cases before it by appeal or writ of error.' The power exists in every case that reaches the court through the exercise of its appellate power, as, for example, by the writ of *certiorari* (*Staples* v. *Brown*, 113 Tenn. 639, 85 S. W. 254; *Tennessee Central R. Co.* v. *Campbell*, 109 Tenn. 640, 75 S. W. 1012), as well as by writ of error or appeal, or appeal in the nature of a writ of error; also to proceedings *originating in the court in aid and enforcement of its appellate power at every stage, from their inception in any given controversy to their completion in the full execution of its final judgments and decrees.*" (Italics, that of this court.)

██ The jurisdiction of this Court and of the Court of Appeals cannot be rested upon considerations of injury or inconvenience. We do act though with cautious deliberation so that no injustice will be done to either party. In thus acting "It is well settled, that, in the exercise of the acknowledged jurisdiction of this Court, *we have the right to adopt all the rules* and orders necessary and proper for carrying out and enforcing our judgments. This power is necessarily inherent in the Court, and without it the Court could not exercise and enforce, effectually, its legitimate jurisdiction. Of course, this power could not be legally exercised in contravention of any constitutional provision, or of any legislative act for the restriction or regulation of our appellate jurisdiction. It is provided by the Code 4503, (Now 10637), that the Supreme Court may issue all writs and process necessary for the exercise and enforcement of its jurisdiction; and, by section 4504, (Now 10638), it may (791) make rules of practice for the better dis-

posal of business before it; and, by section 4500, (Now 10634), the Court may order a jury to be summoned forthwith, to determine an issue of fact upon the return of a *scire facias* issuing out of said court." *Newman et al.* v. *Justices of Scott County,* 48 Tenn. 787, 791.

This Court held in the *Newman Case, supra,* that "in all cases where it becomes necessary, in the exercise of its jurisdiction, to the proper enforcement of the orders, judgments or decrees of the Court, that facts should be ascertained, the Court has the power, as a necessary incident to its organization as a court, and under the provisions of the Code, as to the enforcement of its judgments and the adoption of rules of practice, to have such facts ascertained, either by ordering a jury to be summoned, or by referring the matter to its Clerk for taking proof and making a report, as the circumstances of each case may indicate."

The Court of Appeals reasoned that since parties, not before the court in the original suit, were the alleged violators of their injunctive decree that a bill of revivor was necessary to bring these parties before the court, and that such a suit could not be instituted in the appellate court.

"The rule that a decree in chancery, unaided by statute, is *in personam* only and does not execute itself so as to transfer personally or realty within a state is said to have given way to the paramount rule that equity may in all cases so frame its decrees as to make them effective to do equity." 19 Am. Jur., p. 52, section 24.

 In the instant suit the decree was so drawn as to restrain the use of the realty as to the Chaffins and "their heirs, assigns, servants, agents, tenants and representatives." The record in the suit upon which this decree

was based shows that the basis of the decree was the ownership of this realty by Mrs. Robinson. This right or ownership was determined in this very suit and was the real issue upon which the injunctive order was based. Under such circumstances subsequent purchasers were bound by the terms and conditions of the decree. To this extent the decree was *jus in rem* notwithstanding it possessed other features commonly denominated as *in personam.*

 In this State the chancery court is not confined in the exercise of its jurisdiction to decrees *in personam.* Code section 10594 the chancery court is expressly authorized to ''divest the title to property, real or personal, out of any of the parties, and vest it in others, and such decree shall have all the force and effect of a conveyance by such parties, executed in due form of law.''

In *Roberts* v. *Frogge,* 149 Tenn. 181, 258 S. W. 782, 783, the late Chief Justice GREEN, speaking for the Court cites many cases when ''the chancery court in this state has full jurisdiction to entertain actions similar to this one as proceedings in nature of suits *in rem.*''

 It thus seems clear to us that the injunction herein operates against these appellees, the children and assigns of the Chaffins, and if a violation of the injunction is shown they would be in contempt of court. If a third party, new parties, may thus come into the acquisition of rights in property, the title and rights to which have been determined in litigation, and not be bound by the final judgment in the litigation, without a suit *de novo,* they or he might alienate that right to another with the same result and a final decree bearing fruit could never be reached.

''Ordinarily, the highest state courts and the intermediate appellate courts have inherent power to punish

contempts of every kind and character." 12 Am. Jur., section 40, p. 420. In annotations on the subject in 8 A. L. R. 1550; 54 A. L. R. 322; and 73 A. L. R. 1187, many cases are cited supporting the quoted statement. Among the cited cases we find that of *State of Tennessee* v. *Anderson,* 6 Tenn. Civ. App. 1, where at page 7, it is said:

"III. But it is said that this is an Appellate Court only and that it has no jurisdiction to examine witnesses, and it is thence argued that no judgment of contempt can be pronounced. This position is also unsound. The contrary was established if it ever were doubted by the recent case of *State ex rel.* v. *Hebert,* 127 Tenn. 220, 154 S. W. 957, opinion by Chief Justice NEIL. See also the foregoing citation as lending the strongest support to the proposition that Courts of appellate jurisdiction do have the power. We believe that a sufficient answer is to be found in our statutes providing for contempt punishments. The power to punish cannot be denied if the injunction be treated as the process of this Court; and this we have so held. This power is inherent in Appellate Courts as well as in lower Courts. There certainly is no force in the objection that we cannot examine witnesses when a defendant confesses the facts constituting the contempt."

The court which issues the injunction is the court against which the contempt is committed and the court which has jurisdiction to deal with it. 43 C. J. S. Injunctions, sec. 270, page 1029; *Myers* v. *United States,* 264 U. S. 95, 44 S. Ct. 272, 68 L. Ed. 577.

The orders and mandates of a court should be obeyed. Occasionally they are disobeyed, ignorantly or willfully, at which time it becomes the duty of the court,

under its commission from the people as a court, to protect the adjudicated property rights of the litigant by contempt proceedings or otherwise.

From what has been said herein it results that the decree of the Court of Appeals must be reversed and the suit remanded to that court for enforcement of its decree.