**In the Matter of Petition for ADOPTION OF RULE OF COURT FOR the UNIFICATION OF the STATE BAR OF TENNESSEE.**

Supreme Court of Tennessee.

April 17, 1972.

MEMORANDUM

PER CURIAM.

This Memorandum is directed to a Petition for Adoption of a Rule of Court for the Unification of the State Bar of Tennessee, filed by a number of the idea's most ardent proponents.

The Answer, insisting upon rejection of the Petition, is filed by a number of opponents of any plan for the unification of the State Bar for the reasons stated and argued at length before the Court heretofore.

As will be seen hereinafter, neither the issue nor the arguments pro and con are in anywise strangers to this State. We have considered, in depth, the Memorandum written for this Court by Mr. Justice Tomlinson in October, 1955, on the subject of a rule "integrating" the Bar of Tennessee. It was there pointed out:

> "Many distinguished lawyers of this State from time to time over a long period of years have earnestly sought to procure an integrated bar either by legislative enactment or court rule. Many of our distinguished lawyers have just as earnestly sought to defeat these efforts. Each, no doubt, has been animated by that which he or she thought to be for the best interest of the public, the courts, and the profession. There is no need to detail the facts as they have existed from time to time during that long period further than to recite the conditions pertinent to the decision on this petition, as those conditions exist at this time."

In our view, the situation at the present time is not materially different from that presented in 1955.

There are certain things which we deem appropriate to be said. Throughout the long history of Bar integration or unification, there has been ever present a disposition to draw some analogy as between (1) the Court's function to maintain discipline over members of the profession, on the one hand, and (2) those activities of the organ-

ized Bar, itself, to inculcate and maintain, at all times, public respect for the principle of a government of laws and the public image of the Bar, itself, as one composed of those who have met the qualifications to engage in practice, on the other.

The first of the two above concepts involves the quality and integrity of the individual members of the profession as being those properly entitled to hold themselves out before the public as worthy of trust and confidence. A failure to meet appropriate tests in this regard necessarily results in discipline visited upon the offending member of the profession.

As to the second of the two concepts above referred to, this presents another and different category of problem entirely. In no sense is a legal question presented. The issue is one born of the ethics and organization of the Bar of this State.

In an extended effort involving the reading of many thousands of words on this muchly vexed subject, we have come to some reasonably firm conclusions. The basic issue here is whether or not to convert the organization of the Bar from one voluntary in character to one compulsory. To say the least, this has muchly troubled the Court. From all our voluminous reading, it is believed that the one most valid idea of all stated is that neither the present system, nor any other, will work to fulfill the desired aims until and unless those aims have become reasonably well defined and have the overwhelming approval of the Bar. We cannot avoid the conclusion that the present record is substantially short of demonstrating that any such state of affairs has yet been reached in this State.

By no means should it be understood by anything herein said that this Court entertains anything but the highest regard and deepest gratitude for the efforts of the voluntary association of lawyers in common effort to be constantly alert to every opportunity for improvement of the profession and its public image. The lawyers of this State can rest assured that we have given long and even prayerful thought to the problem presented here; but we must say that we are not convinced that the Court, in the present situation, should or could rightly promulgate a rule of compulsory unification of the profession in this State. Thus it is that the petition will, at this time, be denied, but without prejudice.

HUMPHREYS, Justice (concurring).

Without regard to whether the proposed plan of unification has the support of the majority of the members of the Bar, and despite my respect for the opinion of the majority of the members of the Bar that a unified bar is desirable, it is my own opinion that unification must be rejected as a matter of law, because of § 29–110 T.C.A., providing:

"No person shall be granted or denied the license or right to practice law in Tennessee because he or she is or is not a member of any lawful club, association or guild."

The scope of the petition is such that it would have us regulate lawyers, not only in their relationship to the Court and in their practice of the law, as to which I think this Court has supreme authority, and for which arrangements now exist by court rule and statute, but would have us regulate the relationship of all of the lawyers in Tennessee to each other in an association, and forbid any lawyer to practice law except within such association. The question is, not whether this is a good idea, but whether in the face of the statute we have the power to do this.

The powers of this Court derive from Article 6 of the Constitution of Tennessee and those powers implied in the creation of this Court, ordinarily called inherent power. There is nothing on the face of Article 6, which grants the Court the power we are asked to exercise, so we must look to our inherent powers.

A fair statememt with respect to this may be found in 20 Am.Jur.2d Courts, § 78 as

follows: "The statement that a court has certain inherent powers appears frequently in the reported opinions . . . The phrase 'inherent powers' is used to refer to powers included within the scope of a court's jurisdiction which the court possesses irrespective of specific grant by constitution or legislation. Such powers could neither be taken away nor abridged by the legislature. But the inherent powers of a court do not increase its jurisdiction; *they are limited to such powers as are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction."*

In the next section, 79, it is said that "Courts have inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction."

This general statement is in accord with our cases. In Shettles v. State, 209 Tenn. 157, 352 S.W.2d 1, in which a trial court rule was involved, and in Chaffin v. Robinson, 187 Tenn. 125, 213 S.W.2d 32, in which a rule of this Court was involved, it was said that this Court has the inherent power to adopt all rules and orders necessary and proper for carrying out and enforcing our judgments, ("jurisdiction" could be substituted for "judgments") but that such power could not be legally exercised in contravention of any constitutional provision or statute restricting or regulating this Court's jurisdiction. And, in Brewer v. State, 187 Tenn. 396, 215 S.W.2d 798, it is recognized that while a court has power to make rules to serve the purpose for which it was created, it does not have power to abrogate or modify a constitutional statutory rule. And, again, in Oliphant v. Oliphant, 218 Tenn. 155, 401 S.W.2d 778, we said that we have complete authority over our own rules but that we have no authority to extend our jurisdiction beyond the confines fixed by statute if constitutional objections to such confines are not present.

Finally, I call attention to Champion v. State, 43 Tenn. 111, and Ingersoll v. Howard, J., etc., 48 Tenn. 247, where, in the latter case, the right of a lawyer to practice was being infringed upon by a court rule, in disposing of which this Court said:

"§ 3965 of the Code, having prescribed the terms upon which licensed attorneys shall appear and practice in the several courts of this state, *no court has the right to affix other conditions than those imposed by law."* (Emphasis supplied)

All of the above may fairly be summarized by saying that this Court, by virtue of its being the Supreme Court of this State, has implied or inherent power to make any rule or order reasonably necessary to the carrying out of its expected role as the constitutionally created judicial part of the tripartite government of this State. This includes the power to make rules and orders with respect to lawyers and the practice of the law to the extent that this is necessary to the functioning of this Court in its constitutional role. But it must be conceded this power does not include the right to ignore a regularly enacted statute unless the statute interferes with the functioning of this Court to the point that it would be necessary to hold it unconstitutional under Article 2, section 2 of the Constitution of Tennessee which limits the power of the three departments of the state government to matters constitutionally reposed in each department. Thus the question is, whether the integration or unification of the bar is so necessary to the functioning of this Court that § 29–110 T.C.A. is an unconstitutional interference with this Court's power. My own opinion is that the statute is not unconstitutional for this reason.

The case for unification is much weaker than the case against it, viewed in the perspective of the competing constitutional powers of the judiciary and the legislature. This appears from the fact that this Court has functioned since its creation without any such association of its attorneys; and there is no showing that the historical efficiency of this Court and its attorneys has so changed for the worse of late as to re-

quire such an association to correct this change.

That there is no necessity for such a unified bar, is proved by the fact that the supreme courts of a majority of the states function without such an association of its attorneys.

Finally, proof that such an integration is not necessary to the functioning of this Court is to be found in the primary intent of the plan to regulate the relationship of lawyers with each other which, while it might be desirable, is not necessary at all to the functioning of this Court. If in the face of the statute, we were to make such an order, with only a bare majority of our lawyers in favor of it, the result could be great dissension and disharmony, and bitter dissatisfaction with this Court's action which would have a much more adverse effect on this Court's functioning and on the practice of the law than our failure to order unification could ever have.

In summary, let me say that if it should ever appear that a unified bar is necessary in the constitutional sense to the functioning of this Court, I would support the right of this Court to unify the bar, even in the face of a statute; but we have no such case here.