# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
February 15, 2011 Session

## STATE OF TENNESSEE v. JAMES BEELER

**Direct Appeal from the Criminal Court for Washington County**
**No. 35635      Lynn W. Brown, Judge**

---

**No. E2010-00860-CCA-R3-CD - Filed October 26, 2011**

---

Defendant, James Beeler, an attorney, was cited for contempt of court in the Washington County Criminal Court because, during a court proceeding, he communicated with his client's co-defendant who was represented by other counsel. Following a hearing, the trial court found Defendant in contempt of court and imposed a fine and a sentence of ten days in jail. At a subsequent hearing, the trial court suspended Defendant's sentence. Defendant now appeals his conviction and asserts that the evidence was insufficient to support his conviction for contempt of court. He specifically argues that it was error for the trial court to enforce Tennessee Supreme Court Rule 8 or to charge Defendant with criminal contempt for a violation of Supreme Court Rule 8. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., joined. DAVID H. WELLES, SP.J., not participating.

Larry R. Dillow and Katherine L. Tranum, Kingsport, Tennessee, for the appellant, James Beeler.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Janet Hardin, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

*Facts*

Defendant, James Beeler, an attorney licensed to practice in Tennessee, represented Christina Thomas in a criminal proceeding in the Washington County Criminal Court. Her husband, James Thomas, was a co-defendant in that case. Mr. Thomas was represented by attorney Todd Ross. During a suppression hearing on November 4, 2009, while attorney Ross was cross-examining a State's witness, the following transpired:

CROSS EXAMINATION BY MR. TODD ROSS:

[MR. ROSS]:      And – and it's your testimony that when – when they came out of the house and got in the car the first thing they did was get this needle out and – and stick it in their arms?

[WITNESS]:      No. They wiped their hands off.

[MR. ROSS]:      Okay. They wiped their hands off first and then did this?

[WITNESS]:      Yes.

THE COURT:      Could you tell what they were wiping off their hands?

[WITNESS]:      Uhm – it – it – it was – I think it was blood. I couldn't tell.

[MR. ROSS]:      And when you said, they, did – did you actually see both of them wiping things off their hands?

[WITNESS]:      Yes.

[MR. ROSS]:      And what were they using to wipe it off with?

[WITNESS]:      Like baby wipes or something.

[MR. ROSS]:      Okay. And . . .

MR. BEELER:        (Whispering – indiscernible).

[MR. ROSS]:        . . . how long – how long did you guys set in the driveway after they came and got in the car?

THE COURT:         Mr. Beeler, it appears to the court that you are talking to Mr. Ross' client, and I don't think you are allowed to do that without his permission, and you're doing it behind his back.   Have you given Mr. Beeler permission to talk to your client?

MR. ROSS:          No.  No, Your Honor.

THE COURT:         That appears to be a violation of your cod - - the Code of Ethical Conduct, Mr. Beeler.

MR. BEELER:        I didn't get any response from him, Your Honor.

THE COURT:         Well, why are you talking to him if you don't want a response?

MR. BEELER:        Err[or] of judgment, Your Honor.

THE COURT:         The court reporter will type up this portion of the tape and I shall report you to the Board of Professional Responsibility.  I expect better conduct than this from a member of the Bar in this district, of course, you're from another district.  If you come into this district I expect you to be honest, above board and follow the rules.  Do you understand me?

MR. BEELER:        Yes, sir.

THE COURT:         Proceed.

At the conclusion of the hearing, the following transpired:

THE COURT:         Well, I need to make inquiry about something that happened about an hour ago.  Mr. Thomas, stand and raise your right hand, please.

-3-

JAMES STEVEN THOMAS having been duly sworn by the court was examined by the court and testified as follows:

THE COURT:       Be seated where you are. State your full name, please.

MR. THOMAS:     James Steven Thomas.

THE COURT:       How old are you?

MR. THOMAS:     Thirty-four (34).

THE COURT:       And you are one of the two charged defendants in this case?

MR. THOMAS:     Yes.

THE COURT:       You are represented by Mr. Ross?

MR. THOMAS:     Yes, sir.

THE COURT:       When Mr. Ross was questioning the [State's] witness, [ ], Mr. Beeler spoke to you for a period of time, is that correct?

MR. THOMAS:     He was talking, yes, sir.

THE COURT:       What was he telling you, or asking you?

MR. THOMAS:     He was asking me a question, Your Honor.

THE COURT:       What was the question that he asked you?

MR. THOMAS:     He asked me did I go to the store during that time?

THE COURT:       And Mr. Ross has already said that was without permission of counsel. Very well. I need to get the court clerk before I make findings regarding this. So, let's take a really short recess. I've taken more recesses, and it takes me - - it's a hike to get back to my office now. So, court is in recess. Although,

-4-

before I recess - - before I recess, I will say to Mr. Thomas, thank you, sir.

MR. THOMAS:    Yes, sir.

Following a recess and the trial court's ruling on the motion to suppress in the case involving Mr. and Mrs. Thomas, the trial court cited Defendant for criminal contempt, stating as follows:

THE COURT:    The other matter is rather more unpleasant. Mr. Beeler, the court is going to cite you with contempt of court. What you did in this court's presence is something that I have never seen in my entire practice of law since 1977. Mr. Ross was at the lectern examining a witness and you leaned over and talked to his client. Our Rules of Professional Responsibility provide, Rule 4.2 of Rule 8, of the Tennessee Supreme Court says, I quote, "in representing a client a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has consent of the other lawyer, or is authorized by law." Mr. Ross has said he had given no permission for you to talk to Mr. Thomas. Therefore, the court cites you for contempt of court for two things, or two provisions, Tennessee Code Annotated [§] 29-9-102. You are cited for contempt of court for willful misbehavior in the presence of the court so as to obstruct the administration of justice. We cannot have lawyers going behind another lawyer's back and talking to the client. The court's been astounded with what I saw. Also, second reason for citing under the same statute, [p]art [(2)], willful misbehavior of an officer of the court in an official transaction. You're here representing Ms. Thomas, and you have no right to speak to Mr. Thomas. Therefore, you are cited with contempt of court. The clerk will prepare a minute entry of that citation. It is clearly in the record. You're in the hands of the sheriff. Bond is set at ten thousand dollars. And, of

-5-

course, the irony is that Ms. Thomas' previous attorney in this case, Mr. Pratt, got the same treatment for – although, perhaps, a slightly more egregious violation. The court would suggest that you retain counsel. Contempt hearing will be set for December the 18th. Make a bond in the amount of ten thousand dollars ($10,000.00); be back here on December the 18th. And General, you may wish to line up a District Attorney General, Pro Tem, under the circumstance to have a District Attorney from outside the district to come in, unless, Mr. Beeler intends to plead guilty.

GENERAL HARDIN: Yes, sir.

THE COURT: So . . .

MR. BEELER: Your Honor, my intentions are to state that I did make that comment. It was (indiscernible). . . .

THE COURT: I'm not having a hearing today. I'm setting it for hearing for you to show cause why you should not be found in contempt of court. Sheriff, take him to jail.

Defendant filed a motion to dismiss, which the trial court denied. At the contempt hearing, at which Defendant was represented by counsel, Defendant testified, "[t]o my absolute knowledge and still to my knowledge I had full complete permission to talk to [attorney Ross's] client about anything." When asked about attorney Ross's response to the court that he had not given Defendant permission to speak with his client, Defendant testified,

> Your Honor, I think Mr. Ross was caught by surprise and he meant as to that particular question he hadn't at that second given me permission. I do not think he in any way meaning as an all encompassing statement of no because of everything that had transpired prior to that time.

Defendant explained that he, attorney Ross, and their respective clients had been discussing "openly" the case on the day of the suppression hearing and that Defendant even had discussions with attorney Ross's client outside of attorney Ross's presence with attorney Ross's knowledge and consent. Defendant testified,

We had talked about everything about this case with no restrictions, no reservations of any kind or nature. . . . So, Mr. Ross by his conduct had given me complete permission to talk with his client, and I had given him complete permission to talk with my client which he did do.

Defendant testified that he and attorney Ross had also met prior to the hearing, and in that meeting, the two attorneys had "discussed that the defenses were the same, that everything was the same, that the act of one was the act of the other." Defendant further testified,

We decided what witnesses we were hoping to call. We'd talked about dividing cross examination of witnesses and argument of motions. We agreed that we would work together fully and cooperatively, and we never put any restrictions on this except that we would not call the other person's client and have them come to our office, that was the thing we agreed on. We agreed that we would not initiate discussions unless both of us were there, or both of us were aware of it, and that's how the thing happened.

Defendant further testified:

[A]s a matter of fact, Mr. Ross' client had tried to call my office on several occasions, and I refused the call and referred him to Mr. Ross. He also did that on occasion or two when he was represented by Mr. Chrichton, [his] prior attorney. I also turned him away and sent him to Mr. Chrichton. They – he came to my office one day with his wife. I told him I couldn't talk to him. I told him that I absolutely could not. I sent them both away. And the bottom line, his wife's explanation was they didn't know there was anything wrong with that 'cause Mr. Spurrell and Mr. Chrichton talked to them interchangeably whenever. But, I have not talked with them alone at any point in time. I did not talk to him that day without the permission of Mr. Ross.

Attorney Ross testified that he and Defendant had met "on occasion" and had discussed trial strategy and common defenses. He testified that on the day of the suppression hearing, he and Defendant and their clients had spoken freely at the courthouse for "several" hours. Attorney Ross testified that when he left the courthouse for lunch that day, he did not "leave any specific instructions either way" regarding whether Defendant had his permission to speak with his client. Attorney Ross testified,

-7-

From what I understand from my client, the question that was asked of him was something that we had already been discussing that day, and it was just an affirmation that - - of something that had already been talked about, and that's all he was asked. So, I mean, if [Defendant] had asked me is it okay to ask him that question, I certainly wouldn't have minded because we had already - - we had already talked about that so . . .

When asked by the court whether he had given Defendant permission to talk to his client during the suppression hearing, attorney Ross testified, "I never specifically told him he had permission to talk to my client. I mean, it just - - it was never asked. We never talked about that. That never came up, so specifically, no, I guess not."

At the conclusion of the hearing, the trial court made the following findings of fact and conclusions of law:

The court has had an opportunity at the original proceeding on November the 4th to judge Mr. Ross' credibility, again today, and also [Defendant]'s credibility, and they are in conflict. The court finds that Mr. Ross is credible, . . . . Mr. Ross indicated very emphatically, no, that he had not given [Defendant] permission to talk to his client . . . . And then [Defendant], which didn't help his credibility, the court asked, "Well, why are you talking to him if you don't want a response?" in that colloquy. And [Defendant]'s response is, "Error of judgment." And he would have been better served to have admitted and apologized, which he never did. And we've gone through the issues of whether or not this court is enforcing the rules of the Board of Professional Responsibility, particularly, "A lawyer shall not communicate about subject at representation with a person a lawyer knows to be represented by another lawyer unless the lawyer has the consent of the other lawyer or it is authorized by law." And Mr. Ross doesn't back away from what he said before. He says he can understand, it's something that they'd talked about in the past, but that [Defendant] did not have permission. And the problem with this is under the circumstances with Mr. Ross cross-examining a key witness, the issue is whether this is willful misbehavior in the presence of the court so as to obstruct the administration of justice or willful misbehavior of an officer of the court, which [Defendant] as an attorney is, in an official transaction. And the problem is that with Mr. Ross standing there at the lectern cross-examining a witness, he can't be watching his client. And the court is of the opinion that what [Defendant] did was just completely extraordinary, to turn without permission to another lawyer's client and start asking questions about the

case. And just because they may have talked about it before, in the scheme of things doesn't change that. And . . . [Defendant] contradicts himself on page three (3) of that transcript. Question: "And was it your understanding with regards to your ability to communicate with Mr. Ross's client?" And by [Defendant], "To my absolute knowledge and still to my knowledge I had full, complete permission to talk to his client about anything," which conflicts of course with what Mr. Ross said back in November and what he said today. And . . ., we were talking about Mr. Ross' answer that, no he did not have permission, and so I asked [Defendant], "So Mr. Ross is not telling the truth to the court?" [a]nd [Defendant]'s answer . . ., "Your Honor, I think Mr. Ross was caught by surprise. He meant to give that particular question he hadn't at that second given me permission." So [Defendant] admits that he had no permission to talk to [attorney Ross's client]. And again . . . this is [Defendant]'s testimony, "We agreed that we would not initiate discussions unless both of us were there or both of us were aware of it, and that's how the thing happened." So he admits again he talked to [attorney Ross's client] without permission, and as such it disrupts court proceedings. In [Defendant]'s testimony, he sort of hems and haws and says that, well, he had - - doesn't come around and say it this way. I've got that in my notes. He gave permission by his conduct was [Defendant]'s testimony, and that just doesn't cut it. It just doesn't cut it. So the court concludes that the proof is there beyond a reasonable doubt discrediting [Defendant]'s testimony, that [Defendant] engaged in willful misbehavior in the presence of the court so as to obstruct that administration of justice. This court should not have to stop a suppression hearing or a trial because an attorney standing before the court at the lectern has his client questioned by another lawyer behind his back, literally and exactly as it happened. And that also [Defendant] engaged in violation of the contempt statute, willful misbehavior as an officer of the court in an official transaction. We were having a suppression hearing, and he went outside the bounds.

The trial court imposed a fifty dollar fine and sentenced Defendant to ten days in jail, which the trial court later suspended.

*Analysis*

On appeal, Defendant challenges the sufficiency of the evidence. Defendant's arguments can be summarized as follows: 1) Defendant argues that an attorney's violation of Rule 4.2 of Tennessee Supreme Court Rule 8 cannot be the basis for a criminal contempt

-9-

petition in a trial court; 2) Defendant further asserts that, even if an attorney's violation of Rule 4.2 can be the basis of a criminal contempt conviction in the trial court, the evidence in this case is insufficient to sustain Defendant's conviction; and 3) in light of the "joint defense privilege," he cannot be convicted of criminal contempt in this case. Finally, Defendant also raises, for the first time on appeal, the issue of judicial recusal.

It is unclear from the record which subsection of the statute of which Defendant was found guilty. The trial judge stated that he was citing Defendant for two violations of the same statute, Tenn. Code Ann. § 29-9-102(1) and (2). The statute provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
>
> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;

Tenn. Code Ann. § 29-9-102.

The technical record contains only one judgment, which does not specify which subsection of § 29-9-102 of which Defendant was found guilty. It appears from the record, though, that the trial court relied primarily on the first statutory ground for contempt.

*An Attorney's Violation of Rule 4.2 of Tenn. Sup. Ct. R. 8 as a Basis for Criminal Contempt*

The conduct for which Defendant was ultimately convicted of criminal contempt was Defendant's action in speaking in a whisper to Mr. James Thomas in court during a suppression hearing while Mr. Thomas' attorney, Mr. Ross, was cross-examining a witness. Defendant was not charged with, or found to be in, contempt for merely talking during the proceedings, and he was not charged with, or found to be in, contempt for talking too loudly. Furthermore, Defendant's conduct was not contemptuous for what was said, but rather to whom the words were spoken. In other words, if Defendant had spoken in the same manner to counsel for the co-defendant, the conduct would not have been contemptuous under the notice provided by the court. Likewise, if Ms. Thomas had whispered to Mr. Thomas in the same manner as Defendant whispered to Mr. Thomas, that conduct, under the trial court's notice of contempt, would not be criminal contempt based upon the record in this case.

Defendant was not charged with contempt for cursing, yelling, throwing objects, or disrupting court proceedings in such other direct methods.

Thus, absent the fact that Mr. Thomas was represented by another attorney (Mr. Ross), Defendant's brief communication in court with Mr. Thomas while Mr. Ross was cross-examining a witness could not be the basis for a criminal contempt conviction based upon the record in this case. The case *sub judice* is therefore not a situation where the conduct of a defendant, in and of itself, is contemptuous whether or not the conduct is also in violation of the Rules of Professional conduct.

An example illustrative of this point is the conduct by an attorney which was the basis for a criminal contempt conviction in *State v. Randy George Rogers*, No. E2007-02535-COA-R3-CV, 2008 WL 4414699 (Tenn. Ct. App. at Knoxville, filed Sept. 29, 2008), *no perm. app. filed*. In that case, the defendant, an attorney, was unhappy that the trial court did not take up consideration of his client's case prior to taking a brief recess. As the judge was crossing the threshold from the courtroom to chambers, the defendant threw down his file, uttered the "f" word, and "flipped a bird" at the judge. Undoubtedly, the same conduct by an attorney's non-lawyer client would also result in a criminal contempt conviction. However, while the attorney defendant in *Randy George Rogers* could also be subject to disciplinary action for a violation of the Rules of Professional Conduct for the same conduct, his non-lawyer client obviously would not be subject to discipline under the Rules of Professional Conduct.

The crucial question we must determine in order to resolve this argument by Defendant is this: when the only factual basis for a criminal contempt conviction is a violation by an attorney of Rule 4.2 of Supreme Court Rule 8, and the conduct would not otherwise in and of itself be contemptuous, is the conduct sufficient evidence to support a conviction for criminal contempt in a trial court?

Defendant relies upon *Doe v. Board of Professional Responsibility*, 104 S.W.3d 465 (Tenn. 2003), in support of his argument that the evidence does not support a conviction for criminal contempt in the trial court because a violation of a Supreme Court Rule can be contempt of only the Tennessee Supreme Court. Specifically, in *Doe*, the Supreme Court noted,

> Finally, we address the appropriate forum wherein an action for contempt may be brought. At the outset, it is necessary to reiterate that "[w]e are not fact finders and do not address the credibility of the testimony or weight of the evidence." *State v. Flake*, 88 S.W.3d 540, 553 (Tenn. 2002). This responsibility rests with the trial courts of this State and the juries

empowered thereunder. However, as the Court of Appeals stated in *State v. Gray*, 46 S.W.3d 749, 750 (Tenn. Ct. App. 2000) (perm. app. denied April 16, 2001), the general contempt statute does not "deal with the question of whether a court may punish contempts of another court's order." As a general rule, "the power to punish for contempt is reserved to the court against which the contempt is committed, i.e. the court whose order is disobeyed." *Gray*, 46 S.W.3d at 750 (citing *Chaffin v. Robinson*, 187 Tenn. 125, 213 S.W.2d 32 (1948)). Thus, "[o]ne tribunal may not punish for contempt of another." *Chaffin*, 213 S.W.2d at 32. Additionally, a contempt proceeding is sui generis and is considered incidental to the case out of which it arises, and often stems from an underlying proceeding that is not complete. *See Bowdon v. Bowdon*, 198 Tenn. 143, 278 S.W.2d 670, 672 (1955); *Graham v. Williamson*, 128 Tenn. 720, 164 S.W.2d 781, 782 (1914); *Hall v. Hall*, 772 S.W.2d 432, 435-36 (Tenn. Ct. App. 1989).

In light of the foregoing principles, we hold that the formal charge of contempt against a person in violation of Rule 9, section 25 shall be filed in this Court.

We do not interpret *Doe* to hold as Defendant asserts in his brief. The Court in *Doe* based its ruling on Tenn. Code Ann. § 29-9-102(3). Defendant in the case *sub judice* was charged with contempt pursuant to Tenn. Code Ann. § 29-9-102(1) and (2). Section 29-9-102(3) involves contempt by willful disobedience of a lawful rule of a court. *Doe*, 104 S.W.3d at 473. Further, the Court in *Doe* recognized that the Supreme Court Rule in question (confidentiality of allegations of attorney misconduct under certain situations) was a rule where other provisions of the rule specifically stated that a violation of the confidentiality rule was regarded as contempt of the Supreme Court. *Id*. Finally, the Supreme Court Rule under consideration in *Doe*, Rule 9, section 25, was held to be a standing order of the Supreme Court. *Id*. at 472.

As noted above, Defendant was charged with criminal contempt of court for violating Tenn. Code Ann. § 29-9-102(1) and (2), and not section (3), which was the focus of the holding in *Doe*. Since Defendant's conduct occurred in the presence of the court during court proceedings, in order to show criminal contempt, there had to be proof of "willful misbehavior of any person in the presence of the court," (Tenn. Code Ann. § 29-9-102(1)) or "willful misbehavior of any of the officers of such courts, in their official transactions." (Tenn. Code Ann. § 29-9-102(2)).

We hold that a violation of Rule 4.2 of Rule 8 of the Tennessee Supreme Court Rules by an attorney can be willful misbehavior and can therefore be the basis for a conviction of

-12-

criminal contempt. We further hold that an obstruction of the administration of justice must be proven under Tenn. Code Ann. § 29-9-102(1) only when the willful misbehavior is not directly in the presence of the court, but is "so near thereto as to obstruct the administration of justice."

*Sufficiency of the Evidence to Prove Contemptuous Conduct*

When a defendant attacks the sufficiency of the evidence in a criminal contempt proceeding, we review the record "to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt." *Black v. Blount*, 938 S.W.2d at 399; Tenn. R. App. P. 13(e). We do not reweigh the proof offered at trial, rather, the "defendant has the burden of illustrating to the Court why the evidence is insufficient to support the verdict." *Black v. Blount*, 938 S.W.2d at 399. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and we will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*. (citations omitted).

We conclude that the evidence was sufficient in this case to support Defendant's criminal contempt conviction. The trial court specifically found that Defendant was not credible and that attorney Ross was credible. The proof showed that Defendant willfully violated Rule 4.2 of Tennessee Supreme Court Rule 8. Defendant is not entitled to relief on this issue.

*Joint Defense Privilege*

Defendant contends that the "common interest privilege" or "joint defense privilege" should excuse his conduct. The doctrine is recognized by both federal and Tennessee courts and protects, as privileged, communications and information exchanged between parties and attorneys who share a common legal interest. *See Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 214 (Tenn. Ct. App. 2002). However, the disclosure of privileged or confidential communications is not at issue in this case. Rather, the issue is whether Defendant had attorney Ross's permission to speak to his client. The "joint defense privilege" assumes that Rule 4.2 of Tennessee Supreme Court Rule 8 has been properly followed and not violated. The doctrine relied upon by Defendant would protect against disclosure of information exchanged between the parties and their attorneys in a joint defense. The doctrine is not applicable to the facts of this case. Defendant is not entitled to relief on this issue.

*Recusal*

Defendant also asserts, for the first time on appeal, that the trial judge should have recused himself. Defendant made no objection at the show cause hearing, and allowed the trial judge to preside over the hearing without any request that the trial judge recuse himself from hearing the case. Defendant's failure to request a recusal at the show cause hearing results in waiver of this issue. *See State v. Dominic Jude Amari*, No. 01C01-9703-CR-00077, 1998 WL 345345, *4 (Tenn. Crim. App. at Nashville, June 30, 1998), *no perm. app. filed*. We note, however, that this was a "direct contempt" under Tenn. Code Ann. § 39-3-102(1) that could have been summarily dealt with by the trial court. Nevertheless, the court did not err by treating the matter as an indirect contempt and giving notice of the contemptuous conduct through a show cause order. *See State v. Maddux*, 571 S.W.2d 819 (Tenn. 1978) (direct contempt is based upon acts committed in the presence of the court and may be punished summarily; whereas, indirect contempt is based upon acts not committed in the presence of the court and may be punished only after offender has been given notice and a hearing). We caution, however, that in cases where the judge presides over the hearing of a case that the judge initiated, recusal may be necessary. *See Randy George Rogers*, 2008 WL 4414699 at *1 (the trial judge entered a show cause order regarding the alleged criminal contempt of the attorney, and a substitute judge was appointed to hear the case); *but see Black v. Blount*, 938 S.W.2d 394, 401 (Tenn. 1996) (recusal was not necessary where contempt charge did not "on its face, involve disrespect or criticism of the trial judge.").

## CONCLUSION

Based on the foregoing, we affirm Defendant's conviction.

_____
THOMAS T. WOODALL, JUDGE

-14-